# JAMES A. STEVENS

*vs.*

# THE EMERGENCY HOSPITAL OF EASTON.

*Hospital Corporation—Exclusion of Physician—Corporate
Constitution—Amendment—Voting by Proxy—
Notice of Meeting.*

Where the constitution of a hospital corporation provided for a medical staff consisting of the practitioners of medicine in good standing in the county, from which medical staff the board of directors should designate members to look after the interests of the hospital in accordance with the by-laws, provided, however, that such designation should not in any way conflict with any physician in the management of a private patient, and the by-laws provided for a local staff, to be composed of practitioners in the city in which the hospital was located, to have control of the medical and surgical departments, *held* that the medical staff had no power to exclude a physician in good standing from the use and privileges of the hospital for surgical operations upon his private patients.

pp. 533, 534

A provision in the by-laws of a. hospital, that "no surgical operation of any kind shall be performed except by consent of the active staff" required such consent to the "surgical operation" and not to the physician who was to perform it.    p. 534

Where a corporate constitution provides that it may be amended at an annual meeting or at a meeting specially called. for that purpose, provided thirty days' public notice by advertisement be given of the proposed amendment and of the time and place of the meeting, the requirement of notice of the "proposed amendment" is mandatory.    pp. 535, 536

Where the corporate constitution provides that it may be amended by a two-thirds vote of the members present at a meeting, an amendment was not legally adopted when there were seven hundred and eight members of the corporation, the chairman refused to accept the votes of three hundred and

seventy-five members by proxies, and the evidence tends to show that the proposed amendment was not adopted by a majority of those present, in person or by proxy. pp. 535, 536

Errors in the adoption, at an annual meeting, of an amendment to the constitution, involving a disregard of the provisions of the constitution and by-laws, and of the statute, in regard to notice of the meeting and the vote thereat, cannot be cured by the approval of the minutes of such meeting at the next annual meeting. p. 537

Where the chairman of a meeting refused to permit members to vote by proxy, and stated that the constitution did not permit such voting, and no objection was made to the form or execution of the proxies, that there was no evidence that the proxies were properly executed is immaterial. p. 537

A court of equity has jurisdiction to grant relief by way of injunction to protect a physician in his right to treat his private patients in a hospital, the constitution and by-laws of which accord him such right, and, in determining the right to such relief, to pass upon the validity of asserted amendments of the constitution and by-laws. pp. 537, 538

*Decided January 18th, 1923.*

Appeal from the Circuit Court for Talbot County, In Equity (WICKES, J.).

Bill by James A. Stevens against The Emergency Hospital of Easton, a body corporate. From a decree for defendant, plaintiff appeals. Reversed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, and URNER, JJ.

*Murray Lloyd Goldsborough* and *George Ross Veazey,* for the appellant.

*T. Hughlett Henry* and *W. Mason Shehan,* with whom were *M. Tilghman Johnston, Charles J. Butler* and *Seth, Shehan & Marshall* on the brief, for the appellee.

THOMAS, J., delivered the opinion of the Court.

By his amended bill of complaint in the Circuit Court for Talbot County, the appellant alleged that he was a practitioner of medicine, residing in Easton, Talbot County, where he was engaged in the practice of his profession, "specializing particularly in surgical cases"; that he was in good standing in his profession, a member of the Medical and Chirurgical Faculty of Maryland, and a member of the Talbot County Medical Society; that in the year 1906 the defendant, the Emergency Hospital of Easton, was incorporated under the general laws of the State, as appeared from its certificate of incorporation filed with the bill, and that he was largely instrumental in the organization of the hospital, contributed to its creation financially and otherwise, and had been identified with its work from the day of its organization to the time of the filing of the bill in this case; that the plan of government of the hospital is to be gathered from its charter, constitution and by-laws, and that by article 7 of its constitution it is provided that its medical staff "shall consist of the practitioners of medicine in good standing in Talbot County, including physicians who may have retired from active practice on account of age or for other good reasons," from which staff the directors were to designate representatives to look after the interests of the hospital; that said article also contained the proviso that "such designation shall not in any way conflict with any physician in the management of a private patient, it being the intention to give all physicians of this and adjoining counties an opportunity to control the medical treatment of their private patients, subject to the rules and regulations of the hospital"; that under such provisions neither the plaintiff nor any other physician of Talbot County could be interfered with in the use of the hospital for a private patient, unless and until the membership of the corporation has altered its purposes and objects as set forth in said article; that in 1906 the membership of the corporation, consisting of persons over the age of eighteen

years who had subscribed and paid annually not less than two dollars, adopted the by-laws referred to, by section six of which it was provided that in addition to the medical staff there should be a local staff composed of the members of the Talbot County Medical Society in good standing, practicing in the City of Easton, and that this local staff "shall have control of the medical and surgical departments of the hospital"; that by reason of his membership in said society he became "automatically" a member of said local staff, with the right to practice surgery in the hospital, of which he could not be deprived except by the action of the membership of the corporation by way of an amendment of its constitution and by-laws; that said section of the by-laws also provided for the selection of an active staff consisting of three physicians to be taken from "a given list," and that he, the plaintiff, is specially named in said section "as one of the list"; that a later paragraph of said section six of the by-laws provided that any physician who is a member of the Medical and Chirugical Faculty of Maryland may send his "patients to this hospital and have the privilege of treating their own patients when so admitted, or he may designate any M. D. in good standing to attend such patients"; that by reason of said constitution and by-laws, and particularly article 7 of the constitution and section 6 of the by-laws, and the "several positions and capacities held by him," the plaintiff is entitled to all the benefits and privileges of said hospital accorded to physicians and surgeons for which the hospital was founded; that on or about the 5th of April, 1920, four physicians living in the town of Easton, and styling themselves "The Staff," passed a resolution, a copy of which was filed with the bill, the effect of which, "if permitted to be carried into effect," would be to deprive all physicians not named therein of the proper use and benefit of the hospital; that the effect of said resolution would be to defeat the objects and purposes of the corporation, and that it is contrary to the constitution and by-laws and null and void; that since the date of said

resolution he, the plaintiff, has been illegally and wrong-fully deprived of the use and benefit of the hospital in the treatment of his surgical cases, and has been denied the right to operate surgically upon his private patients in the hospital by four of the directors and the superintendent of the hospital, who, acting under said resolution, with the approval of the board of directors, has denied him the right to use the operating room and equipment of the hospital; that such conduct of the defendant corporation, its officers, agents, &c., has greatly injured his reputation and professional standing, his practice has been greatly damaged and he has sustained great loss and damage, and that he will continue to sustain and suffer great loss and damage unless the court restrains the defendant corporation, its officers, agents, &c., from interfering with his rights, as such wrongs are not susceptible of adequate remedy at law.

The defendant demurred to the amended bill, but the court below overruled the demurrer, whereupon the defendant filed its answer and moved to dissolve the injunction that had been granted, in which answer it alleged that the defendant had such powers as are set forth in its charter, constitution and by-laws and is given under the laws of the State; that the copy of the constitution and by-laws filed as plaintiff's exhibit D was not a true copy of the constitution and by-laws "now in existence" or in existence at the time of the institution of this suit; that the true copy of the same is filed with the answer as exhibit A; that the provisions of the constitution have been altered as shown by said Exhibit A; and that it denies that any physician, under the charter, constitution, by-laws or general law, "as they now exist, or as they existed at any time," was authorized to practice surgery in said hospital without the consent of the board of directors or other properly constituted authorities; that it admits that the provision mentioned in the bill does appear in section six of the by-laws as they formerly existed, but that said provision was repealed prior to the institution of the suit, and that no

physician by reason of his membership in any medical or
surgical faculty, or society, has the right to perform surgical
operations in the hospital; that on the 5th of April, 1920, a
meeting of the staff of the hospital was held, at which there
were present Dr. Stevens, Dr. Davidson, Dr. Travers, Dr.
Palmer and Dr. Hammond, and that at said meeting those
present elected a surgical staff, composed of Dr. Davidson,
Dr. Travers and Dr. Palmer, and a medical staff, composed
of Dr. Stevens and Dr. Hammond, and that "Dr. Stevens,
not being named upon the surgical staff, withdrew from the
meeting," that said action of the staff was reported to and ap-
proved by the board of directors on the 14th of June; that it
admits that after said election and the approval thereof, the
board of directors undertook to prevent the plaintiff from per-
forming surgical operations in the hospital; that on the 4th
of October, 1920, at the regular meeting of the members of
the defendant corporation, the constitution thereof was
amended, so that after that date the constitution was and is
as set forth in defendant's exhibit A, and that under the
constitution as amended the staff of the hospital has full
authority and control over surgical operations to be performed
in the hospital; that it will appear by defendant's exhibit D
that certain physicians have been designated as being entitled
to perform surgical operations in the hospital, and that the
plaintiff is not one of them; that the whole case is based upon
the provisions of the constitution as it existed prior to the
amendment of October 4th, 1920, but that even under the
former constitution and by-laws, especially under section 6
of the by-laws, which provided that "no surgical operation
of any kind or character shall be performed except by con-
sent of the active staff," the plaintiff, in view of the action
of the staff, had no right to perform surgical operations in
the hospital at the time of the institution of this suit.

The constitution of the defendant corporation, as it stood
prior to the alleged amendment of October 4th, 1920, pro-
vided that the "board of directors shall have general manage-

ment and control and care of the finances, property and equipment of the corporation, with power to fix the number of assistants to the superintendent and the salaries to be paid to such assistants. They shall also have the power to fill all vacancies occurring in the board of directors or of positions held by the employees," and article 7 of the constitution was as follows:

"Article 7. Medical Staff.—There shall be a medical staff to consist of the practitioners of medicine of good standing in Talbot County, including physicians who may have retired from active practice on account of age or other good reasons, all of whom shall be members of the society without dues, from which medical staff the board of directors shall designate members as they think proper to look after the interests of the hospital in accordance with such by-laws as may hereafter be enacted, provided, however, that such designation shall not in any way conflict with any physician in the management of a private patient, it being the intention to give all physicians of this and adjoining counties an opportunity to control the medical treatment of their private patients, subject to the rules and regulations of the hospital. Any physician residing outside of the county may become an associate member of the staff upon application, duly approved by the local staff."

Section 6 of the by-laws provided:

"6. Staff. In addition to the staff as provided for in the constitution there shall be a local staff to be composed of the members of the Talbot County Medical Society in good standing, practicing in the City of Easton, Maryland, who shall have control of the medical and surgical departments of the hospital. From such local staff an active staff shall be selected to consist of three physicians to be taken in rotation from the following list, to wit:

"E. R. Trippe, J. A. Stevens (the plaintiff), J. B. Merritt, C. F. Davidson, S. D. Willson, P. L. Travers, A. B. Hayward.

"They shall serve one month dating from the 15th of each month, and their duty shall be to take charge of all cases, expressing no preference, or in an unconscious condition, and shall pass upon the propriety of admission of applicants to the hospital when asked to do so by the superintendent.

"Any physician who is a member of the Medical and Chirurgical Faculty of Maryland may send his patients to this hospital, and have the privilege of treating their own patients when so admitted, or he may designate any M. D. in good standing to attend such patients.

"No surgical operation of any kind or character shall be performed except by consent of the active staff."

The resolution of April 5th, 1920, referred to in the bill and answer, under which, it is alleged in the bill and admitted in the answer, the plaintiff was prevented from performing surgical operations in the hospital, was a resolution, purporting to have been adopted by the "Medical and Surgical Staff," declaring that the surgical staff of the hospital should be composed of Dr. Charles F. Davidson, Dr. Philip L. Travers and Dr. William N. Palmer, and that the medical staff should be composed of the above named physicians and Dr. James A. Stevens (the plaintiff) and Dr. William T. Davidson.

The learned court below, in overruling the demurrer to the amended bill, held that under the constitution and by-laws of the defendant corporation, as they existed prior to the alleged amendment of October 4th, 1920, the "Medical Staff" had no power to pass the resolution of April 5th, 1920, "the effect of which was to deprive" the plaintiff "of the use of the hospital, its attendants and equipment, for performing surgical operations upon his own patients." Whether the

resolution referred to can be construed as having the effect mentioned, it is not necessary for us to determine, but we entirely concur in the view of the court below that it afforded no authority for the alleged and admitted exclusion of the plaintiff from the use and privileges of the hospital for surgical operations upon his private patients. The suggestion of the appellant that authority for such action is found in that part of section 6 of the by-laws which provided: "No surgical operation of any kind or character shall be performed except by consent of the active staff," is without force, for it is obvious that the consent of the active staff referred to has reference to the *"surgical operation"* and not to the physician who is to perform it.

In its answer the defendant set up an alleged amendment to the constitution and by-laws on October 4th, 1920, under which it sought to justify the resolution of April 5th, 1920, and the action taken by the officers and agents of the corporation in, pursuance thereof, and upon the evidence produced the court below, taking the view that the amended constitution and by-laws authorized the action complained of, and that it could not in this case pass upon the validity of such amendments, dissolved the injunction previously granted, and dismissed the plaintiff's bill, and from its decree the plaintiff has brought this appeal.

Section 14 of article 23 of the Code provides:

"Every corporation which is subject to the provisions of this article shall hold annually a stated or regular meeting for the election of directors and for the transaction of general business; the time and place of holding such meetings, and the notice to be given thereof and of the business to be transacted thereat, may be regulated by the by-laws, and unless otherwise provided by the by-laws, each shareholder or member shall be given notice of the place, day and hour of such meeting in the manner provided for in the next succeeding section; and such annual meetings shall be general meetings—that is to say, open for the trans-

action of any business within the powers of the corporation without special notice of such business, unless such notice is required by this article or by the by-laws."

And section 15 provides how such notice of the place, day and hour of the meeting and of the business proposed to be transacted shall be given.

Section 17 of article 23, volume 4 of the Code, provides that "a majority in number of all the members present in person or by proxy, shall constitute a quorum" and that, "except in cases in which it is by this article provided that the vote of a certain number of shares or of a certain number of members is requisite, the vote of a majority of any quorum shall be sufficient to elect and to pass any measure within the powers of a majority of the holders of all the shares or of a majority of all the members," and section 23 of the same article and volume provides how the notice of the time, place and purpose of any meeting of members, "whether required by the by-laws" or "any provision of this article," may be dispensed with.

The provision of the constitution of the defendant in regard to amendments, as it existed prior to the alleged amendment, was as follows:

"Article 6.   Amendments.—This constitution may be amended by a two-thirds vote of the members present at any annual meeting or at a meeting of the association specially called for that purpose, provided thirty days' public notice by advertisement shall be given of the proposed amendment and of the time and place of the meeting."

The evidence shows that while the requisite notice of the time and place of the meeting of October 4th, 1920, was given, no notice whatever was given of the "proposed amendment," as required by the constitution. It further appears from the evidence that at that time there were seven hundred

and eight members of the corporation, and that at the meeting of the members on that day the chairman of the meeting refused to accept the votes of three hundred and seventy-five members by proxies, and the evidence tends to show that the amendments proposed were not adopted by a majority of those present, in person or by proxy. The evidence also shows a number of other irregularities in the conduct of the meeting of the members of October 4th, 1920, at which it is claimed the amendments in question were passed, but it is not necessary to make further reference to them, as the failure to comply with the mandatory provision of the constitution referred to, and the fact that it does not appear that the amendments were adopted by the majority of the members present, in person or by proxy, renders the alleged amendments absolutely null and void. It is said in 19 *R. C. L.* p. 1191, sec. 12: "The constitution, however, is a part of the fundamental law of such an association, and it prevails over the provisions of a conflicting by-law. The provisions of the constitution are absolutely controlling except where in contravention of the law of the land or public policy," and in reference to by-laws it is said on page 1192 of the same volume: "Ordinarily, the fundamental law of the association provides for the manner of enactment, and where such is the case the prescribed method should be strictly followed in order to insure their validity." It is said in 14 *C. J.* p. 358, sec. 456. "In altering, amending, or repealing by-laws it is necessary to comply substantially with the formalities, if any, prescribed by the mandatory provisions of the charter, governing statute, or articles of incorporation, or by the constitution or by-laws in force at the time where these are binding upon the body making the change," and in the case of *Mutual Fire Ins. Co. v. Farquhar,* 86 Md. 668, the Court held that a by-law adopted without the previous notice of the amendment proposed required by the charter of the company was invalid. In 14 *C. J.* p. 356, several cases are cited in support of the text: "A by-law of a corporation, or its 'constitution' which has the force of a by-law only, cannot take away the inherent

power of the corporation to adopt such other by-laws as its
charter permits, and therefore a by-law is not invalid because
in its adoption certain rules of procedure prescribed by other
by-laws were not complied with." But certainly no such rule
could be held to apply where the statute law of the State
requires that notice of the business to be transacted at a
meeting shall be given either in accordance with the provi-
sions of the by-laws of the corporation or the provisions of
the statute, and where the evidence shows that neither the
provisions of the constitution and by-laws nor the provisions
of the statute were complied with.

The appellant contends that as the minutes of the meeting
of October 4th, 1920, were read and approved at the annual
meeting of the members on October 3rd, 1921, any errors in
the adoption of the amendment were cured. But to adopt this
view would render nugatory the provisions of the constitu-
tion and by-laws and of the statute of the State.

In reference to the proxies the appellant also contends
that there was no evidence to show that they were properly
executed. But the evidence shows that the chairman of the
meeting refused to permit the members to vote by proxy, and
the minutes of the meeting state that when the question of
the admission of proxies arose at the meeting, the "chair
stated that the constitution does not allow voting by proxy."
It is said in 14 *C. J.* p. 909, sec. 1408: "Where objection
was made as to the right of voting by proxy, but none was
made as to the form, execution, or validity of the proxies
themselves, it was held as against a later attempt to raise the
objection that in the absence of proof that the persons exe-
cuting the proxies were members of the society and that the
proxies were properly executed, it would be presumed that
the proxies were regular and proper." In this case there was
no objection made to the form or execution of the proxies,
but the ruling of the presiding officer of the meeting was that
the members would not be permitted to vote by proxy.

There can be no doubt about the jurisdiction of a court of
equity to grant the relief prayed, and, in determining the

right of the plaintiff to that relief, to pass upon the validity of the amendments referred to interposed by the answer. In the case of *Johnston* v. *Jones,* 23 N. J. Eq. 216, the court said, quoting from the syllabus: "A court of equity has no jurisdiction to remove an officer from an office of which he is in possession, or to declare such office forfeited. But when, in a suit of which equity has jurisdiction, the question of the right to an office, or as to the regularity of an election, arises, and must be decided to obtain the equitable relief, that court is competent to inquire into and decide these matters for the purpose of the suit." And in the case of *Supreme Lodge* v. *Simerling,* 88 Md. 276, JUDGE BOYD, speaking for this Court, said: "That a court of equity has power to enjoin the individual defendants, who are members of the Supreme Lodge, from excluding any properly qualified state representatives from the right to vote at any session of the Supreme Lodge we have no doubt. * * * The appellees are not seeking the aid of a court of equity to place them in office. They have not been elected to such offices and do not claim them, but as members and state representatives of the association, they have the right to the aid of a court of equity to prohibit these officers, who have thus refused and still refuse to permit those entitled to take part in the deliberations and acts of this important body, from excluding them from the right to vote." See also *Webb* v. *Ridgely,* 38 Md. 364, and *Mutual Fire Ins. Co.* v. *Farquhar, supra.*

It follows from what has been said, that the plaintiff was entitled to the relief prayed in his bill, and that the decree of the court below dissolving the injunction and dismissing his bill must be reversed and cause remanded in order that a decree may be passed in accordance with the foregoing opinion.

> *Decree reversed, with costs, and cause remanded in order that a decree may be passed in accordance with the opinion of this Court.*