## Hughes v. Good Samaritan Hospital et al.

Jan. 16, 1942.

124

Henry S. McGuire for appellant.

George W. Vaughn and J. Owen Reynolds for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming.

Appellant was plaintiff below; the hospital and doctors who constituted the executive board, defendants. Appellant asserted that he was qualified to practice medicine and surgery; had been so engaged for thirty years or more, and had practiced in hospitals in Lexington and surrounding towns for many years, until recently barred from performing surgical operations in defendant hospital.

He charged that the executive board "illegally and wrongfully claiming to have sole supervision over the question of who may practice surgery in said institution," which is "open to and receives patients from all parts of the state," has attempted to and given orders to those in charge of the institution to deny him the right to practice his profession of surgery in the institution, which he alleges is a public institution "not owned and supported by the defendants." That said denial "is without right or cause and against public policy." Appellant had complied with all legal requirements.

It is asserted that unless the defendants be restrained from interfering with his practice of surgery in the institution he will suffer great and irreparable injury for which he has no adequate remedy at law. In other respects his petition meets the Code requirements where injunctive relief is sought; he asked for a temporary restraining order, and upon final hearing a permanent injunction. The defendants severally demurred and without waiving filed joint answer.

The matter was submitted upon motion for temporary restraining order. Appellant testified; defendants did not offer proof. The court granted the restraining order in conformity with the prayer of the petition. It was agreed that the matter be referred to the commissioner to hear proof and report. The commissioner filed a comprehensive report, from which we shall quote to some extent. He first sets out, correctly, the pleadings of both parties and states the question as he viewed it, to be "whether or not the plaintiff has a vested right to use the operating room of the Hospital in his private practice." He found from proof that plaintiff was a competent and qualified surgeon, with a successful practice covering a long period of years, and no proof which would tend to show that plaintiff had ever been guilty of unprofessional conduct; that on June 9 and August 14, 1939, Miss Johnson, superintendent, conveyed to appellant in writing the fact that in order for the hospital to continue as an accredited hospital, it would be necessary for appellant to have the indorsement of the proper board of officers of the American College of Surgeons, "which is after all responsible for the standard of the hospital."

Dr. Hughes treated the action of the superintendent as denying to him the further use of the operating room in the hospital, and based his suit on the information received. The commissioner found the underlying reason for denying the right to use the operating room to be that plaintiff, a general practitioner, had invaded the field of the specialist by performing certain operations, which are under rules usually performed in the hospital by surgeons classified as specialists, and such continued practice would take the hospital from the accredited list.

The record does not show the rule or rules referred to, and the only light we have on the subject is contained in the letters from the superintendent, who, it appears from the proof, is the "agent and chief officer of the board of trustees, and charged with sole management of the hospital."

The commissioner took up the purely legal questions, saying that he had been referred to no case in our jurisdiction which threw light on the matter, first dealing with the question as to whether or not, under the proof, and as a matter of law the hospital was a public institution; secondly, whether or not the plaintiff had any vested right to demand the right to practice in its operat-

ing room. On the first point he found it to be a public charity in the sense that it renders some service to indigent ailing members of the public, but a private corporation. The proof introduced bears him out in this conclusion. It is true that it is shown that the county and city make yearly appropriations for the care and treatment of indigent patients, which one or the other, or both, send to this or some similar institution for care and treatment, payment being made on accounts rendered for services, a matter of contract between the parties.

It may be argued that the hospital is a quasi-public charitable institution, yet not wholly so, since it is in a great part maintained by fees paid by patients able to pay, and by the city and county for services rendered its indigent patients. The distinction (if there be any) is made in the case of Van Campen v. Olean General Hospital, 210 App. Div. 204, 205 N. Y. S. 554, 555, wherein it appears a doctor sought injunction to prohibit the hospital from dropping him from the staff because he complained of the management, charging that it was a public institution, and that the action of the management was arbitrary and capricious. The trial court granted the relief, but the Supreme Court (N. Y.) reversed, saying:

"To state it plainly, his claim is that he has been deprived of the right to use in his business the property of another, this defendant. The learned trial court has found and the judgment declares that the defendant is a public corporation. With due deference we cannot take that view. Public corporations are the unstrumentalities of the state, founded and owned by it in the public interest, supported by public funds, and governed by managers deriving their authority from the state." Citing the Dartmouth College Case, 4 Wheat. 518, 4 L. Ed. 629.

"There are many public institutions in this state, devoted to the care of afflicted and unfortunate people. They may be conducted directly by the state, or they might be made by statute corporate bodies. * * * Corporations organized by permission of the Legislature undertake to perform similar duties. * * * These are private corporations. That they are engaged in charitable work for the benefit of the public, and thereby affected with a public interest, does not make them public corporations. * * * The fact that they may re-

ceive a donation from the government to enable them to carry on their work, or funds from a city or county to care for sick, disabled indigent persons, * * * does not affect their character as private institutions. * * * The law does not require a corporation like defendant to furnish its services and accommodations to every one who applies, whether patient or physician. * * * Nor do we deem it such discrimination, if from a large number of physicians it selects members of its visiting staff with regard, not only to their medical skill, but to their adaptability to the rules and discipline of the institution. * * * Even in public hospitals, the same rule in the selection of patients and physicians must apply, for the only inhibition by statute against discrimination we have discovered is that relative to students in incorporated medical colleges.''

As suggested by the commissioner, no case directly in point is found in our reports, and all cases from other jurisdictions, apparently are noted following a Tennessee opinion in the case of Henderson v. City of Knoxville et al., reported in 157 Tenn. 477, 9 S. W. (2d) 697, 60 A. L. R. p. 657. The commentator said:

''Although there are comparatively few cases on the subject under annotation it seems to be the practically unanimous opinion that private hospitals have the right to exclude licensed physicians from the use of the hospital, such exclusion resting within the sound discretion of the managing authorities.''

There are then cited the Van Campen case, supra; State ex rel. Wolf v. La Crosse Lutheran Hospital Ass'n, 181 Wis. 33, 193 N. W. 994; People ex rel. Replogle v. Julia F. Burnham Hospital, 71 Ill. App. 246; Harris v. Thomas, Tex. Civ. App., 217 S. W. 1068, and Anonymous; Comb. 41, 90 English report, all of which support the expression of opinion by the commentator. We need not burden the opinion with facts stated on which the rulings were based; a reference will show them to be so similar in nature as to justify the application of the rule here.

The Henderson case, supra, to which annotations are appended, is an exception to the rule. There the court held that Dr. Henderson could not be excluded from the use of the hospital unless he had been guilty of unethical

conduct as denounced by statute, but had a right, as long as he kept within the law, to practice in the Knoxville General Hospital, which the court found to be a public institution under the control of a city managing board. The annotator remarks that the position taken by the court "illustrates that a different rule may be applied to private and public hospitals."

The case of Stevens v. Emergency Hospital, 142 Md. 526, 121 A. 475, may be classed as an exception, though it is clear from a reading, the court's conclusion was based chiefly on the fact that other physicians who undertook to oust Dr. Stevens, had amended the institutions' Constitution giving them the power, without notice to Dr. Stevens, and where it appeared that he, with those attempting his ouster, had jointly equipped and assisted in the maintenance of the operating room.

The Henderson case, supra, is not exactly in line with a decision of the Supreme Court in Hayman v. City of Galveston et al., 273 U. S. 414, 47 S. Ct. 363, 364, 71 L. Ed. 714; there the hospital was maintained by the city on land leased by the State of Texas, governed by the city commissioners and members of the governing board of another hospital. This board had made a rule excluding all osteopaths from practicing in the hospital, as well as patients who proposed to be treated by this class of practitioners. Dr. Hayman, a duly licensed osteopath, based his right to practice in the hospital on the provisions of the State and Federal Constitutions. The court concluded that the action of the board violated no right guaranteed to appellant by either document. In holding no denial of equal protection, the court said:

"But the only protection claimed here is that of appellant's privilege to practice his calling. However extensive that protection may be in other situations, it cannot, we think, be said that all licensed physicians have a constitutional right to practice their profession in a hospital maintained by a state or a political subdivision, the use of which is reserved for purposes of medical instruction." See also recent case of Richardson v. City of Miami, 144 Fla. 294, 198 So. 51.

We are not citing the case supra as authority in this case, since we have clearly indicated above our conclusion that the hospital in question is a private institution, and

it is on the ground that it is a public institution which appellant bases his right in pleading, proof and in brief.

Another point argued is that the executive staff had no power to direct his exclusion and that the superintendent's action was without basis. The proof shows that the executive board took no part in the matter; it was an action of the superintendent, who as the proof shows had complete authority in all matters of conduct, and who was responsible for the conduct and maintenance of the hospital in such a manner as to keep it on the accredited list; her effort brought about the result. The record shows that the board of trustees, on September 15, 1939, by resolution and order, approved the action of the superintendent.

The high standing of appellant is not at all questioned in the proceeding. As far as the record shows, and as commissioner reported, he has had success in his chosen profession, and the decision of this case should not be treated as any reflection on his skill as a practitioner, or his standing in the medical profession. We have before us merely one question—his vested right to operate in the rooms of appellee hospital, when it for no manifested arbitrary or capricious reason, but in the exercise of a reasonable discretion to maintain its institution on an accredited basis, decided otherwise. Appellant has failed to demonstrate that he has such a vested right, either by contract, inherently or as vouchsafed by any constitutional provision, hence we are of the opinion that the chancellor properly dissolved restraining order and denied permanent injunction.

Judgment affirmed.