38 N.J. Super. 284 (1955)
118 A.2d 696
MORRIS JOSEPH, PLAINTIFF-APPELLANT,
v.
PASSAIC HOSPITAL ASSOCIATION, A CORPORATION OF THE STATE OF NEW JERSEY, ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 14, 1955.
Decided December 5, 1955.
*285 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Max Eisenstein argued the cause for plaintiff-appellant (Messrs. Eisenstein & Eisenstein, attorneys. Mr. Harry Green, of counsel).
Mr. Charles E. Villanueva argued the cause for defendants-respondents (Messrs. Van Riper & Belmont, attorneys).
The opinion of the court was delivered by CLAPP, S.J.A.D.
The plaintiff, Dr. Morris Joseph, appeals from a summary judgment entered against him. Sometime in the latter part of 1952, when he was apparently 63 years of age, he resigned from the active medical staff of the defendant Passaic Hospital Association, on which he had served 25 years as a senior attending surgeon. He was thereupon elected as a member of the emeritus staff and as such, was entitled, it would seem, to the privileges of the active staff, but without certain responsibilities for ward patients. On February 15, 1954 the board of governors of the hospital at a regular meeting decided not to reappoint him.
He sues the hospital association, a corporation, for reinstatement and other relief, joining (with questionable propriety) a large number of defendants, including all persons constituting its board of governors and medical board, certain officials of the hospital, together with the medical staff, an unincorporated association.
The constitution of the Hospital Association and the by-laws adopted by its medical staff (the important provisions *286 are set out in the opinion below, 35 N.J. Super. 450, 452 (1955)) are in several respects obscure. More than that, it is not clear whether these by-laws control the board. However we shall, for the purposes of the motion for summary judgment, assume that they do. Defendants do not say otherwise; in fact they admit that the board approved the same. Cf. L. 1877, c. 103 (particularly § 5, p. 161) under which act the Hospital Association was incorporated; L. 1899, c. 76, § 2, p. 197. Cf. also N.J.S.A. 15:1-4(e).
One question presented by the constitution and by-laws is whether they call for the reappointment of the emeritus staff annually. Certain provisions thereof so indicate. They seem to provide that the medical staff (and the medical staff is defined to include emeritus members) are to be appointed annually by the board of governors (Hosp. Const., Art. VIII, Sec. 6; By-Laws, Art. II, Secs. 1, 2, first sentence) at its December meeting "for the ensuing calendar year" (Hosp. Const., Art. VIII, Sec. 2). The by-laws repeat this somewhat explicitly with respect to the active medical staff. But there is rather noticeably no repetitive provision as to members emeritus. Moreover in fact the plaintiff seems to have been elected to the emeritus staff "sometime in the latter part of 1952" and then to have stayed on without further action on the part of the Hospital Association until February 1954. We are therefore not entirely clear whether the contemplation of the constitution and by-laws was to have the emeritus staff reappointed annually. It would seem better not to attempt to resolve this question now (since the case has to go to trial because of other circumstances). Proof at the trial might establish a general practice on the part of the board of governors with respect to emeritus appointments, which might help to dispose of the question.
If, however, we assume that it was intended to have emeritus members reappointed annually, we are confronted with another question, namely, whether they each have the right to a hearing (if the member desires it) before he fails of reappointment. This turns on a provision of the by-laws, as follows:

*287 "Section 6. Terminations and Removals.
A. The active service of any member shall terminate automatically on his sixty-fifth birthday, at which time said member shall automatically be appointed to the Emeritus Staff, and any member may voluntarily retire at the age of sixty years at his own request, and may be eligible for election to the Emeritus Staff.
B. Appointments to the active Medical Staff shall be made by the Board of Governors on recommendation of the Medical Board on an annual basis, and subject to review each year by the Governors. Before a man fails of reappointment, he shall be given an opportunity to be heard by the Board of Governors if he so desires."
Is this second sentence of subsection B to be construed as applicable to members emeritus? After considerable hesitancy, we have come to the conclusion  contrary to that reached by the court below  that it is so to be construed. (As a matter of good draftsmanship the sentence (and the one following it, not quoted) should of course have been designated Section 6C.) It seems to us to be not unreasonable to suppose (with both the emeritus and the active staffs reappointed annually) that an intention to provide a hearing in case a member fails of reappointment, might apply alike to the emeritus member as to the active member. But this is a mere speculation. The persuasive fact here is that the joint committee of the hospital, purporting to act for the board of governors, has indicated that this was the construction adopted in practice. It wrote two letters to the plaintiff in January 1954, the first of which, dated January 26, 1954, stated that the board of governors, through that committee,
"in accordance with the constitution and by-laws will give you an opportunity to be heard on the question of your reappointment to the Medical Staff" February 1, 1954 at an hour and place specified.
The second, dated January 29, 1954, stated:
"all appointments to the Medical Staff including Emeritus members are for a period of one year." The meeting on February 1st "is to give you an opportunity to be heard on the question of whether or not you should or should not be reappointed to the Emeritus Staff."
*288 With this construction in mind, we find that the factual situation here, as nearly as we can resolve it on this most sketchy record, presents three possibilities for our consideration:
(1) The Board of Governors at its December meeting in 1952 may have appointed the plaintiff to the emeritus staff for the "ensuing calendar year" 1953 and then never reappointed him. Under the by-laws, as above stated, he had a right to a hearing before the board of governors (if he wished) before he failed of reappointment.
(2) When plaintiff resigned in the latter part of 1952, he may have been given an appointment "until the end of the calendar year" (Hosp. Const. Art. VIII, Sec. 6) 1952, or perhaps it was an appointment for a period of one year from the date of appointment. He seems never to have been reappointed, but to have held over after the appointment expired, in which case we think he would be subject to removal only after a hearing before the Board of Governors  if he desired it. (Hosp. Const. Art. VII, Sec. 11.)
(3) He may have been appointed in 1952 without a term, in which case we think he would be entitled to be removed only after a hearing under the provision of the constitution last cited.
Looking over these three possibilities, it will appear that in each case the plaintiff was entitled to a hearing before the board of governors, if he desired it. The defendants in effect by their motion admit that he requested such a hearing but was denied it. In fact, the joint committee assumed to hear him on February 1, 1954 on behalf of the board; but this was clearly not their function. To be sure, some board members sat on the joint committee, but not enough to constitute a quorum of the board. Clearly the action of this Committee was not the action of the board. Cf. Jennings v. Shepherds of Bethlehem, 67 N.J.L. 126, 128 (Sup. Ct. 1901).
We do not need to determine what matters the board of governors was obliged to pass upon at a hearing with respect to a reappointment or with respect to a removal. Suffice it to say, for present purposes, that we think it was then impliedly required to make its determination at least without malice. The defendants, however, on this motion admit that the act of the board of governors in failing to *289 reappoint him and the act of the medical board in failing to recommend his reappointment were
"executed in bad faith and motivated by malice, for the purpose of depriving plaintiff of his means of earning a livelihood and for the further purpose of enriching other members of the Surgical Staff who would benefit from the absence of plaintiff."
Malice may be averred generally. R.R. 4:9-1.
Unfortunately defendants have tried to dispose of these issues through a motion for summary judgment. No affidavit was submitted by them except on the question whether the defendant hospital was a private institution  a matter now admitted. As to a public hospital, see Jacobs v. Martin, 20 N.J. Super. 531 (Ch. Div. 1952). As to the distinction between public and private hospitals, see West Coast Hospital Ass'n v. Hoare, Fla., 64 So.2d 293 (Sup. Ct. 1953); Hughes v. Good Samaritan Hospital, 289 Ky. 123, 158 S.W.2d 159 (Ct. App. 1942); Levin v. Sinai Hospital of Baltimore City, 186 Md. 174, 46 A.2d 298 (App. Div. 1946); Van Campen v. Olean General Hospital, 210 App. Div. 204, 205 N.Y.S. 554 (App. Div. 1924), affirmed 239 N.Y. 615, 147 N.E. 219 (Ct. App. 1925); cf. Leeds v. Harrison, 9 N.J. 202, 217 (1952).
It is ordinarily very difficult to secure a summary judgment on affidavits when the moving party is charged with malice. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 76 (1954). Here there is not even an affidavit on that matter.
The question then is simply whether the allegations of the complaint state a cause of action. Cases on all fours have not been found. However some cases are cited to us, as indicating that the managing authorities of a private hospital may be under a duty to exercise a "sound discretion" or merely a "discretion" in circumstances such as those alleged here. West Coast Hospital Ass'n v. Hoare, Fla., 64 So.2d 293 (Sup. Ct. 1953); Hughes v. Good Samaritan Hospital, 289 Ky. 123, 158 S.W.2d 159 (Ct. App. 1942); Levin v. Sinai Hospital of Baltimore City, 186 Md. 174, 46 *290 A.2d 298 (1946); Annot. 24 A.L.R.2d 850, 852; cf. Stevens v. Emergency Hospital, 142 Md. 526, 121 A. 475 (1923); Van Campen v. Olean General Hospital, 210 App. Div. 204, 205 N.Y.S. 554 (1924), aff'd. 239 N.Y. 615, 147 N.E. 219 (1925); Harris v. Thomas, 217 S.W. 1068, 1077 (Tex. Civ. App. 1920). The term "discretion" commonly gives rise to an ambiguity. It may impose no limitation upon the actor except to call for good faith. On the other hand it may call not only for good faith but also for some measure of reasonableness, as, ordinary prudence or a course of action not clearly unreasonable, or otherwise. We need not involve ourselves in this problem. Here the charge is bad faith.
The above authorities do not deal with a number of questions suggested here. However there are analogies of various sorts, as, where a member, officer or other functionary seeks reinstatement to membership or to a position formerly held in a trade union, professional association, church, charity, educational institution, club or other association not for pecuniary profit, incorporated or unincorporated.
Perhaps the leading case in this extensive area of the law is Dawkins v. Antrobus, L.R., 17 Ch. D. 615, particularly 630 (C.A. 1881). In general, see Chaffee, Internal Affairs of Associations Not For Pecuniary Profit, 43 Harv. L. Rev. 993 (1930); Annotation, Club  Suspension or Expulsion, 20 A.L.R.2d 344; Religious Body  Suspension or Expulsion, 20 A.L.R.2d 421. The case has been followed in Zeliff v. Knights of Pythias, 53 N.J.L. 536, 537, 538 (Sup. Ct. 1891), and the Zeliff case in turn has been cited several times, most recently in Beedie v. Int. Bro. Electrical Workers, 25 N.J. Super. 269, 272 (App. Div. 1953). Cf. Leeds v. Harrison, 9 N.J. 202, 215 (1952).
We need not at this juncture of the case approve the dicta appearing in the Zeliff opinion. They raise various questions. It may be asked what rights the plaintiff here has in the event it appears on a trial of this action that the by-laws were not violated because he never sought a hearing before the board of governors. Is the board of governors, even so, *291 required to meet a certain standard of conduct when considering his reappointment or removal? Moreover, what are plaintiff's rights if it should appear that even though there was a violation of the by-laws, nevertheless a hearing would have served no purpose in that his removal or the failure to reappoint him was justified? These questions should not be resolved now; the parties have not on this argument dealt with them sufficiently.
Suffice it here to hold that the allegations of the complaint setting forth a failure to give plaintiff the hearing due him under the by-laws  taken in conjunction with the allegations charging certain defendants with malice in connection with his failure of reappointment or removal  clearly make out a cause of action.
This cause of action is proprietary in nature. It rests on an allegedly malicious impairment of a property right  the right of the plaintiff to earn a livelihood in his profession and to secure the economic advantages accorded to him pursuant to the by-laws. Longo v. Reilly, 35 N.J. Super. 405, 410-413 (App. Div. 1955); Chaffee, op. cit., 1001; Comment, Protection of Membership in Voluntary Associations, 37 Yale L.J. 368, 371 (1927). Cf. Kravis v. Hock, 136 N.J.L. 161, 164 (E. & A. 1947), Cameron v. International, etc., Union No. 384, 118 N.J. Eq. 11, 20 (E. & A. 1935) and Barr v. Essex Trades Council, 53 N.J. Eq. 101, 112 (Ch. 1894) holding that the right to practice one's profession is a property right. Certain aspects of the cause of action may perhaps (we need not decide the matter) be also regarded as contractual or delictual in character. Thus the action may be said to arise out of a breach of a contract between plaintiff and the hospital set out in its constitution and the by-laws of the medical staff. Walsche v. Sherlock, 110 N.J. Eq. 223, 227 (Ch. 1932); Grupe v. Rudisill, 101 N.J. Eq. 145, 153 (Ch. 1927), and cases cited; Moore v. Conover, 123 N.J. Eq. 61, 74 (Ch. 1937); but cf. Roxbury Lodge, etc., v. Hocking, 60 N.J.L. 439, 440 (E. & A. 1897); Chaffee, op. cit., 1001-1007. Or it may be said to arise out of a tortious interference with the relationship between the *292 Hospital Association and the plaintiff. Chaffee, op. cit., 1007. In any event the complaint, as we say, states a cause of action.
The parties have not dealt with the question whether the remedy for breach of this cause of action lies through a mandatory prerogative writ proceeding for reinstatement. Sibley v. Board of Management of Carteret Club of Elizabeth, 40 N.J.L. 295 (Sup. Ct. 1878); Zeliff v. Knights of Pythias, 53 N.J.L. 536 (Sup. Ct. 1891); Welch v. Passaic Hospital, 59 N.J.L. 142 (Sup. Ct. 1896)  involving the very hospital which is a party defendant here; Hughes v. North Clinton Baptist Church, 75 N.J.L. 167 (Sup. Ct. 1907); Stahl v. Roumanian Young Men's Ass'n, 77 N.J.L. 380 (Sup. Ct. 1909); Stevenson v. Atlantic City Real Estate Board, 103 N.J.L. 615 (E. & A. 1927), affirming 3 N.J. Misc. 1102 (Sup. Ct. 1925); Pirics v. First Russian, etc., Society, 83 N.J. Eq. 29, 34 (Ch. 1914). Or whether there is a remedy through an injunction. Dragwa v. Federal Labor Union No. 23070, 136 N.J. Eq. 172, 178 (Ch. 1945); O'Brien v. Musical Mutual P. & B. Union, 64 N.J. Eq. 525, 530 et seq. (Ch. 1903); Annotation 24 A.L.R.2d 850, 862, 863; Chaffee, op. cit., 1010-1013; Comment, Protection of Members in Voluntary Associations, 37 Yale L.J. 368, 369 (1927). As these authorities disclose, the courts in the past seem to have been much concerned with this procedural question. However under the practice of today and, in any event, in view of the present status of this action, that matter need not detain us.
Reversed.