**Warren F. SPENCER, M.D., Plaintiff,**

v.

**The COMMUNITY HOSPITAL OF EVANSTON, Defendant.**

**No. 74 C 3256.**

United States District Court,
N. D. Illinois, E. D.

April 22, 1975.

Ellis E. Reid and John W. Hatch, McCoy, Ming & Black, Chicago, Ill., for plaintiff.

Sidley & Austin, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

KIRKLAND, District Judge.

This cause comes before the Court on defendant's motion to dismiss the complaint for failure to state a cause of action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In the alternative, defendant moves to stay these proceedings on grounds that a similar action is pending in state court.

This is an action for injunctive relief and for damages brought by a Black physician where jurisdiction is invoked pursuant to Title 28 U.S.C. §§ 1331, 1343 and 1651; Title 42 U.S.C. §§ 1981, 1983 and 1985; and the Thirteenth and Fourteenth Amendments to the Constitution of the United States. The defendant is an Illinois not-for-profit corporation which renders medical service primarily to the Black community of Evanston. Plaintiff claims that agents of defendant hospital have conspired with agents of predominately White Evanston General Hospital, to cause the smaller hospital, Community Hospital of Evanston, to be merged with or utilized by the Evanston General Hospital as an out-patient ambulatory care facility. Plaintiff's complaint alleges that in furtherance of that goal, "agents of defendant and agents of Evanston General Hospital have conspired to unlawfully remove plaintiff's staff privileges at the defendant hospital" because of plaintiff's opposition to this union.

Plaintiff further alleges that he, individually and on behalf of the Black community of Evanston, has opposed termination of defendant hospital's family practice and general medical programs which serve primarily the Black community of Evanston.

The issue before the Court is whether the allegations of the complaint state a cause of action under §§ 1981, 1983 and 1985 of Title 42 U.S.C.

■ To be entitled to relief under § 1983 plaintiff must show that defendant was acting "under color of" state law. The controlling consideration is whether there is sufficient relationship between the alleged private entity (defendant hospital) and the State to make the private entity a *de facto* public body, whose activities would constitute state action.

Three leading Supreme Court cases address the issue. In Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961) a restaurant which discriminated against Blacks leased its premises from an agency of the State of Delaware. The building housing the restaurant was publicly constructed, owned and maintained, and used for public purposes. The court held there was sufficient governmental involvement so as to render the private activities of the restaurant public insofar as due process was concerned. In Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972), the Supreme Court applied concepts narrowing *Burton*. The case involved a Negro guest of a member of a private club being refused service because of his race. Plaintiff sought to require the liquor board to revoke the club's license until the discriminatory practices were discontinued. The issue was whether the state's regulatory and licensing practice constituted sufficient state action to create a cause of action under § 1983. In holding the state's regulatory activities insufficient to constitute state action, the Court stated:

Our holdings indicate that where the impetus for the discrimination is private, the State must have 'significantly involved itself with invidious discriminations,' . . . in order for the discriminatory action to fall within the ambit of the constitutional prohibition. 407 U.S. at 173, 92 S.Ct. at 1971.

In December, 1974 the Supreme Court decided Jackson v. Metropolitan Edison Co., 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed. 2d 477. In *Jackson* plaintiff claimed that termination of electric service to his home by a privately owned utility company constituted state action because of extensive state regulation. In rejecting that claim, the Court specified a more concise test as to state action:

> Here the action complained of was taken by a utility company which is privately owned and operated, but which in many particulars of its business is subject to extensive state regulation. The mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment. Moose Lodge No. 107 v. Irvis, *supra*, [407 U.S.] at 176–177, 92 S.Ct. [1965] at 1973 [32 L.Ed.2d 627]. Nor does the fact that the regulation is extensive and detailed, as in the case of most public utilities, do so. Public Utilities Comm'n v. Pollak, 343 U.S. 451, 462, 72 S.Ct. 813, 820, 96 L.Ed. 1068 (1952). It may well be that acts of a heavily regulated utility with at least something of a governmentally protected monopoly will more readily be found to be 'state' acts than will the acts of an entity lacking these characteristics. *But the inquiry must be whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself.* Moose Lodge No. 107, supra, at 176, 92 S.Ct. [1965] at 1973, 419 U.S. at 349, 95 S.Ct. at 453, 42 L.Ed.2d at 483–484 (Emphasis added).

The Court went on to say:

> Doctors, optometrists, lawyers, Metropolitan, and Nebbia's upstate New York grocery selling a quart of milk are all in regulated businesses, providing arguably essential goods and services, 'affected with a public interest.' We do not believe that such a status converts their every action, absent more, into that of the State. 419 U.S. at 354, 95 S.Ct. at 455, 42 L.Ed.2d at 485–486.

The Seventh Circuit has twice applied a substantially similar test. In Lucas v. Wisconsin Electric Power Co., 466 F.2d 638 (7th Cir. 1972), later reiterated in Doe v. Bellin Memorial Hospital, 479 F. 2d 756 (7th Cir. 1973) the Court said:

> *The 'under color of' provision [of Title 42 U.S.C.A. Sec. 1983] encompasses only such private conduct as is supported by state action. That support may take various forms, but it is quite clear that a private person does not act under color of state law unless he derives some 'aid, comfort, or incentive,' either real or apparent, from the state. Absent such affirmative support, the statute is inapplicable to private conduct.*

> *We believe that affirmative support must be significant, measured either by its contribution to the effectiveness of defendant's conduct, or perhaps by its defiance of conflicting national policy, to bring the statute into play.* 466 F.2d at 654–656. (Emphasis Added).

Plaintiff alleges state action predicated upon (1) a favorable $1.00 per year land lease from the Metropolitan Sanitary District of Greater Chicago; (2) receipt of Hill-Burton Act funds in constructing the hospital; (3) operation of an alcohol abuse program pursuant to contract with the City of Evanston; and (4) receipt of funds from the state for care of indigent patients.

█ The fact that a hospital receives public funding or operates specified medical programs for the state does not of itself satisfy the requirement that the state's involvement with the challenged action of the hospital must be of such nature that action of the hospital can fairly be considered action of the state.

█ Plaintiff's complaint does not allege that the State of Illinois or any political subdivision thereof has in any

way encouraged, aided, or supported the alleged merger, nor that the state has in any way encouraged or supported the removal of Dr. Spencer from staff privileges at the hospital. Neither has it been alleged that the removal of Dr. Spencer would in any way advance the interests of the state or any political subdivision or that such action was taken at their undisclosed request, or with their support or concurrence. In short, plaintff has not alleged state involvement in the hospital action which would permit the challenged action of the hospital to be imputed to the state, within the meaning of § 1983.

Plaintiff relies upon two Fourth Circuit cases: Simkins v. Moses H. Cone Memorial Hospital, 323 F.2d 959 (4th Cir. 1963), and Sams v. Ohio Valley General Hospital Assn., 413 F.2d 826 (4th Cir. 1969). In both *Simkins* and *Sams*, the court held that receipt of Hill-Burton funds required sufficient state action in compliance with the Act's provisions to hold certain actions of the hospital to be state action under § 1983. The Seventh Circuit, in the *Doe* opinion, *supra*, limited *Simkins* to its facts:

> Unlike the fact situation in Simkins v. Moses H. Cone Memorial Hospital, 323 F.2d 959 (4th Cir. 1963), on which plaintiffs place heavy reliance, this record does not reflect any governmental involvement in the very activity which is being challenged. We find no basis for concluding that by accepting Hill-Burton funds the hospital unwittingly surrendered the right it otherwise possessed to determine whether it would accept abortion patients. 479 F.2d at 761.

Plaintiff also relies on Holmes v. Silver Cross Hospital of Joliet, Illinois, 340 F.Supp. 125 (N.D.Ill.1972). There Judge Will adopted the reasoning of *Simkins*. However, in an opinion filed March 31, 1975, Judge Will altered his position in *Holmes* thusly:

> In support of these incidents of state involvement, the plaintiffs have offered considerable material which ar-

guably establishes that the defendant is subject to pervasive regulation, benefits substantially from governmental subsidies, and provides services which supplement the State's mental health system. Even accepting the existence of these criteria, in the face of emerging decisional law running *contra* to *Holmes*, and seriously eroding its precedential effect, we find that the plaintiffs have failed to establish jurisdiction over the defendants. Doyle v. Unicare Health Services, Inc., No. 74 C 828 (Mar. 31, 1975).

Judge Will reviewed Jackson v. Metropolitan Edison Co., 419 U.S. 345, 95 S. Ct. 449, 42 L.Ed.2d 477 (1974), Doe v. Bellin Memorial Hospital, 479 F.2d 756 (7th Cir. 1973), and authorities from other circuits and concluded:

> Applying the standard reflected by the aforementioned cases we do not find that the plaintiffs have alleged the requisite involvement by the state in the wrongful conduct at issue here. Regardless of the extent to which the defendants receive governmental support, or the degree of government regulation, unless the state activity or involvement related to the conduct which caused Mary Ann Hawken's death, the instant cause of action is not actionable under § 1983. Since there is no allegation that the state, either through neglect or purposeful failure to properly regulate the defendant, sanctioned or gave tacit approval to the defendants' course of conduct, the defendants cannot be subject to federal jurisdiction. (Memorandum Opinion at 9.)

Plaintiff also cites Citta v. Delaware Valley Hospital, 313 F.Supp. 301 (E.D. Pa.1970). More recent authority in that Circuit, however, casts doubt on the continuing validity of the *Citta* opinion. For example, in Hoberman v. Lock Haven Hospital, 377 F.Supp. 1178 (M.D. Pa.1974) the court refused to find state action in a Section 1983 suit even though the defendant hospital received Hill-Burton funds, payments from medi-

care and medicaid programs, other grants or services from governmental units, and had to comply with rules and regulations promulgated by the state department of welfare. 377 F.Supp. at 1186–1188. See Ozlu v. Lock Haven Hospital, 369 F.Supp. 285, 287–288 (M.D.Pa.1974) for holding to the same effect.

The cases relied upon by plaintiff are not in accord with the present weight of authority. As to specific state involvements, numerous cases have held that receiving Hill-Burton funds and being subject to state regulation do not convert an otherwise private hospital into one acting "under color of" State law. Ward v. St. Anthony Hosp., 476 F.2d 671 (10th Cir. 1973); Jackson v. Norton-Children's Hospitals, Inc., 487 F.2d 502 (6th Cir. 1973); Barrio v. McDonough District Hosp., 377 F.Supp. 317 (S.D.Ill.1974); Mulvihill v. Julia L. Butterfield Memorial Hosp., 329 F.Supp. 1020 (S.D.N.Y.1971); Barrett v. United Hosp., 376 F.Supp. 791 (S.D.N.Y.1974); Slavkoff v. Harrisburg Polyclinic Hosp., 375 F.Supp. 999 (M.D.Pa.1974); Shulman v. Washington Hosp. Center, 222 F.Supp. 59 (D.D.C.1963).

■ Leasing of land by a hospital from a state agency is insufficient to convert a private hospital into one acting "under color of" state law. Akopiantz v. Bd. of County Com'rs., 65 N.M. 125, 333 P.2d 611 (1959).

■ Donation of land by the federal or state government to a hospital has likewise been held insufficient. Shulman v. Washington Hosp. Center, 222 F.Supp. at 60, 62 (1963); Monyek v. Parkway General Hosp., 273 So.2d 430 (Fla.Dist.Ct. of App., 1973).

■ Nor does a private hospital lose its character because it receives funds from the State for care of indigent patients or other governmental financial assistance. Shulman v. Washington Hosp. Center, 222 F.Supp. at 61, 62 (1963); Halberstadt v. Kissane, 31 A.D.2d 568, 294 N.Y.S.2d 841 (1968); West Coast Hospital Ass'n v. Hoare, 64 So.2d 293 (Fla.1953); Hughes v. Good Samaritan Hospital, 289 Ky. 123, 158 S.W.2d 159 (1942); Van Campen v. Olean General Hospital, 210 App.Div. 204, 205 N.Y.S. 554 (1924), aff'd, 239 N.Y. 615, 147 N.E. 219. Mauer v. Highland Park Hosp. Foundation, 90 Ill.App.2d 409, 232 N.E.2d 776 (1967).

In sum, there is no allegation that the State, either through neglect or purposeful failure to properly regulate the defendant, sanctioned or gave tacit approval to defendant's conduct. Plaintiff's failure to show state activity related to the challenged conduct of defendant, results in the complaint not stating a cause of action under § 1983.

Sections 1981 and 1985 of Title 42 U.S.C., unlike § 1983, proscribe private conduct and, with one exception, do not require state action in order to state a cause of action under their provisions.

■ It is well settled that to state a cause of action under § 1985, it must be alleged that there was "some racial, or . . . class-based, invidiously discriminat[ed] animus," thereby seeking to deprive a plaintiff and/or others in his class, "of the equal enjoyment of rights secured by law to all."

The principles governing the application of Section 1985(3) were enunciated by the Supreme Court in Griffin v. Breckenridge, 403 U.S. 88, 101–02, 91 S. Ct. 1790, 1798, 29 L.Ed.2d 338 (1971):

> That the statute was meant to reach private action does not, however, mean that it was intended to apply to all tortious, conspiratorial interferences with the rights of others. For, though the supporters of the legislation insisted on coverage of private conspiracies, they were equally emphatic that they did not believe . . . 'that Congress has a right to punish an assault and battery when committed by two or more persons within a State' . . . The constitutional shoals that would lie in the path

of interpreting § 1985(3) as a general federal tort law can be avoided by giving full effect to the congressional purpose—by requiring, as an element of the cause of action, the kind of invidiously discriminatory motivation stressed by the sponsors of the limiting amendment. . . . The 'language requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that *there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators action. The conspiracy in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all.* (Emphasis Added).

Other cases following *Griffin* have held Section 1985(3) only encompasses racially discriminatory action. *E. g.* Arnold v. Tiffany, 487 F.2d 216, 218 (9th Cir. 1973), cert. denied, 415 U.S. 984, 94 S. Ct. 1578, 39 L.Ed.2d 881 (1974); Ward v. St. Anthony Hosp., 476 F.2d 671, 676 (10th Cir. 1973); Jackson v. Norton-Children's Hospitals, Inc., 487 F.2d 502 (6th Cir. 1973); Barrio v. McDonough District Hosp., 377 F.Supp. 317, 320 (S. D.Ill., 1974); Furumoto v. Lyman, 362 F.Supp. 1267, 1286 (N.D.Calif.1973).

The scope of Section 1985(3) has recently been explained by the Seventh Circuit in Dombrowski v. Dowling, 459 F.2d 190 (7th Cir. 1972). The Court stated:

> The breadth of the statute's coverage is yet to be determined, but three categories of protected rights have been plainly identified. *Griffin* gives express recognition to a black citizen's Thirteenth Amendment rights and to his federal right to travel interstate; the title of the statute expressly identifies the third category, namely, rights protected by the Fourteenth Amendment. We think the § 1983 cases make it clear that in this third category a 'state involvement' requirement must survive *Griffin*. *Id*. at 195.

*Dombrowski* indicated that a cause of action under Section 1985(3) seeking to assert a Fourteenth Amendment right must allege state action. Under prevailing standards the defendant is a private hospital and not one sufficiently involved with the state or federal government to be considered as acting "under color of" state law.

The complaint also alleges, under Section 1985, violations of Thirteenth Amendment rights—which must, under *Griffin*, allege racial or otherwise class-based discriminatory action.

Similarly, under Section 1981, a cause of action may be founded only upon allegations of racially discriminatory conduct. Waters v. Wisconsin Steel Wks. of Internat'l Harvestor Co., 427 F. 2d 476, 492 (7th Cir. 1970); Dombrowski v. Dowling, 459 F.2d 190, 199 n. 22 (7th Cir. 1972).

Plaintiff does not allege any invidious, racial or class-based discrimination. He does not allege that defendant hospital is depriving Black physicians of staff privileges or that defendant is depriving Blacks from hospitalization. Rather, plaintiff asserts that on behalf of the Black community of Evanston, he opposed an alleged merger between defendant and Evanston General Hospital, and because of his opposition to this merger "agents of defendant and agents of Evanston General Hospital have conspired to unlawfully remove plaintiff's staff privileges at the defendant hospital." (Complaint, ¶ 5.)

In essence, plaintiff alleges (1) an agreement between management of two hospitals to merge, with control of plaintiff's hospital to pass to the other hospital; (2) as a result of this merger, plaintiff's hospital will be converted to use as an out-patient medical facility; (3) plaintiff opposes this plan because in his view it will have an adverse affect upon the Black community of Evanston; (4) as a result of his opposition, plaintiff's staff privileges were removed as a

result of agreement of agents of both hospitals.

This Court holds that these allegations of the complaint do not state a claim for which relief may be granted.

The plan of the two hospitals to merge is not alleged to be illegal. Conversion of use by the incoming management of plaintiff's hospital is not alleged to be illegal. The fact that conversion of use of Community Hospital will have an adverse effect upon the Black community is not alleged to be sufficient basis to make that action illegal. Finally, the allegation that plaintiff was illegally removed from his position because of his disagreement with controlling managers does not state a claim for constitutional redress.

While it is unfortunate that corporate managers sometimes choose to remove rather than deal with those who disagree, such action does not give rise to Constitutionally-predicated relief within the meaning of the Civil Rights Act. The Civil Rights Statutes were not intended to apply to all tortious, conspiratorial interferences with the rights of others. To be entitled to relief under Sections 1981 and 1985, defendant must be motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Griffin, supra,* 403 U.S. at 102, 91 S.Ct. at 1798.

Sections 1981 and 1985 of the Civil Rights Act require that a plaintiff be deprived of his rights *because* he is Black. That is not what the complaint in this instance alleges.

Assuming other requirements of the law to be satisfied, an allegation that conversion of use of Community Hospital was done with a design to discriminate against Blacks, and that plaintiff was discharged because of his opposition thereto, would state a cause of action. An allegation that plaintiff was discharged because he is Black would also state a cause of action.

Had plaintiff alleged in his complaint, as opposed to a motion brief, that he was discharged so that a White man could be appointed in his stead, the complaint would state a cause of action. Allegations made during court appearances and in motion briefs do not remedy defective allegations of the complaint.

The complaint is dismissed for failure to state a cause of action under Sections 1981, 1983 and 1985 of the Civil Rights Act. Plaintiff is granted twenty days leave to file an amended complaint.