35 N.J. Super. 450 (1955)
114 A.2d 317
MORRIS JOSEPH, PLAINTIFF,
v.
PASSAIC HOSPITAL ASSOCIATION, A CORPORATION OF THE STATE OF NEW JERSEY, ET ALS., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided May 13, 1955.
*451 Messrs. Eisenstein & Eisenstein (Mr. Harry Green, of counsel), attorneys for plaintiff.
Messrs. Van Riper & Belmont, attorneys for defendants.
*452 GRIMSHAW, J.S.C.
The defendant Passaic Hospital Association is a corporation not for pecuniary profit which has for its purpose, "the care, cure, nurture and maintenance of sick, injured, infirm, aged, indigent, deaf, dumb, blind, idiotic or insane persons, and of orphans, half orphans and destitute children, and the education of nurses." To carry out the purposes, the corporation maintains a hospital under the name of Passaic General Hospital. The income of the defendant corporation is derived from fees paid by patients and contributions from charitably inclined persons and corporations. The City of Passaic pays to the defendant the sum of $18,000 annually for care and treatment given to indigent residents of the City of Passaic.
The Board of Governors of the Passaic Hospital Association is entrusted with the management and control of the hospital. The members of that board are named as defendants as are several members of the medical staff.
The provisions of the constitution of the Passaic Hospital Association relating to the medical staff are as follows:

"ARTICLE VIII

Medical Staff

Section 1. Medical Board Membership and Organization.
There shall be a Medical Board, consisting of seven members, of whom six shall be selected from the Medical Staff and one shall be the President of the Medical Staff.
The Medical Board may adopt such rules and regulations as it deems proper for its organization and function, these rules and regulations to be subject to the approval of the Board of Governors and shall not be inconsistent with this Constitution.

Section 2. Purpose and Responsibility.
The Medical Board shall be responsible to the Board of Governors for the professional care of all patients, and it shall, therefore, direct and control the medical and surgical practices of the Hospital in all their branches, subject to such rules and regulations as are prescribed for the admission and care and discharge of patients.
The Medical Board shall recommend to the Board of Governors annually, prior to the December meeting, the physicians to constitute the Medical Staff for the ensuing calendar year.

* * * * * * * *

Section 5. Joint Committee.
The Medical Board shall appoint three of its members who shall meet with three representatives of the Board of Governors and the Director of the Hospital for the purpose of discussing matters concerning *453 the Hospital service and to make such recommendations as they may decide upon to the Board of Governors. This Joint Committee, whose Chairman shall be appointed by the President of the Board of Governors, shall meet at least four times during each year, and oftener at the call of its Chairman.

Section 6. Medical Staff.
There shall be an organized medical staff composed of qualified physicians privileged to work in the Hospital and to serve the Hospital in the professional care of its patients.
The Medical Board shall recommend to the Board of Governors the membership of the Medical Staff with the assignments of service. Appointments on the Medical Staff shall be made for a period of one year or until the end of the calendar year of the Hospital. Appointments on the Medical Staff will be made annually at the December meeting of the Board of Governors. Final responsibility for appointments or cancellation of appointments rests with the Board of Governors.
The Medical Staff shall be divided into the following types of membership:
Emeritus, Consultant, Senior Attending,
Associate Attending, Assistant Attending,
Clinical Assistants.

* * * * * * * *

Section 11. Terminations and Removals.
The active service of any member of the Medical Staff shall terminate automatically on his sixty-fifth birthday, at which time such member shall be automatically appointed to the Emeritus Staff; and any such member may voluntarily retire at the age of sixty years at his own request and shall be eligible for election to the Emeritus Staff.
Any member of the Medical Staff, or the Courtesy Staff, may be removed at a regular meeting or at a special meeting of the Board of Governors by a vote of three-fourths of the Governors present, after a conference between representatives of the Medical Board and the Board of Governors, and, after the member in question has been given an opportunity to be heard by the Board of Governors, if he so desires.
Final responsibility for appointment, cancellation of appointment or failure to renew an appointment shall rest with the Board of Governors."
The by-laws of the medical staff having reference to its composition and the qualification of the medical staff, are as follows:

"ARTICLE II

Organization

Section 1.
The Medical Staff shall be composed of Physicians and Surgeons elected annually by the Staff, whose election shall, upon the recommendation *454 of the Medical Board, be presented to the Board of Governors for appointment to serve the hospital in the professional care of its patients.

Section 2.
The Medical Staff shall be divided into the following divisions or types of membership: Emeritus, Consulting, Senior Attending, Associate Attending, Assistant Attending and Clinical Assistants. Only residents or practitioners of the communities served by the hospital shall be eligible for election to the Medical Staff.
A. The Senior Attending Staff shall consist of physicians duly elected who have been appointed by the Board of Governors to the care and responsibility of ward and free patients on the various services.
A Senior Attending physician shall be eligible for election to the Medical Board.
B. The Associate Staff shall consist of physicians duly elected and appointed who have served with merit on the assistant staff and who have been selected by their respective departments for advancement to the Associate Staff.
Associate Attendings shall have such active ward duties as are assigned to them by their Senior Attendings.
C. The Assistant Staff shall consist of physicians duly elected and appointed to serve in the capacity of assistants to members of the Attending and Associate Attending Staffs.
D. The Clinical Assistants shall consist of physicians recommended by their sections and duly elected by the Medical Staff and appointed by the Board of Governors to serve in the Out Patient Department and to render such other services as the Director of their department may desire.
E. The Consulting Staff shall consist of recognized specialists who, when duly elected and appointed, shall upon request give their services gratuitously in the care of ward and free patients.
F. The Emeritus Staff shall consist of those physicians who, having completed their active service are elected or appointed to this honorary position.
(1) They may be eligible to the Medical Board.
(2) They may be eligible to the Consulting Staff provided they are recognized specialists.
(3) They shall have no regular duties or responsibilities in the care of ward patients, except in cases of national emergency when their services may be requested by the staff.
(4) They shall have full voting privileges in the staff and section meetings.

* * * * * * * *

Section 6. Terminations and Removals.
A. The active service of any member shall terminate automatically on his sixty-fifth birthday, at which time said member shall automatically be appointed to the Emeritus Staff, and any member may voluntarily retire at the age of sixty years at his own request, and may be eligible for election to the Emeritus Staff.
*455 B. Appointments to the active Medical Staff shall be made by the Board of Governors on recommendation of the Medical Board on an annual basis, and subject to review each year by the Governors. Before a man fails of reappointment, he shall be given an opportunity to be heard by the Board of Governors if he so desires. In all such matters, the Board of Governors, through the Joint Committee, shall properly confer with the Medical Board, but the action of the Board of Governors shall be final."
The plaintiff is a physician and surgeon of many years' experience. For a number of years he was associated with the hospital in various capacities and during part of that time he was the senior attending surgeon on the active medical staff. In 1952 the plaintiff resigned from the active staff and was thereupon appointed to the emeritus staff. He was not reappointed for the year 1954. As a result, this litigation was initiated.
The plaintiff charges that the denial of reappointment to the emeritus staff was illegal and void as being in violation of the constitution of the defendant corporation. He charges further that the withholding from him of the use of the hospital facilities has seriously impaired his ability to earn a living and is a violation of his constitutional rights. He seeks a judgment restraining the defendants from interfering with his use of the hospital for the treatment of his patients. He also seeks a judgment compelling the defendants to reappoint him to the emeritus staff and to accord to him all of the privileges flowing from membership on that staff.
A motion for judgment on the pleadings was made by the defendants. It has been treated as a motion for summary judgment. All of the facts recited above are not disputed. The parties are in conflict as to the conclusions to be drawn from those facts.
The first matter for consideration is whether the defendant Passaic Hospital Association is a public or private corporation. The classic statement of the difference between the two kinds of corporations is that made by Mr. Justice Story in Trustees of Dartmouth College v. Woodward, 4 Wheaton 517, 4 L.Ed. 629 (1819):
*456 "Public corporations are generally esteemed such as exist for public political purposes only, such as towns, cities, parishes, and counties; and in many respects they are so, although they involve some private interests; but strictly speaking, public corporations are such only as are founded by the government for public purposes, where the whole interests belong also to the government. If, therefore, the foundation be private, though under the charter of the government, the corporation is private, however extensive the uses may be to which it is devoted, either by the bounty of the founder or the nature and objects of the institution. For instance, a bank created by the government for its own uses, whose stock is exclusively owned by the government, is, in the strictest sense, a public corporation. So a hospital created and endowed by the government for general charity. But a bank, whose stock is owned by private persons, is a private corporation, although it is erected by the government, and its objects and operations partake of a public nature. The same doctrine may be affirmed of insurance, canal, bridge, and turnpike companies. In all these cases, the uses may, in a certain sense, be called public, but the corporations are private; as much so, indeed, as if the franchises were vested in a single person.
This reasoning applies in its full force to eleemosynary corporations. A hospital founded by a private benefactor is, in point of law, a private corporation, although dedicated by its charter to general charity. So a college, founded and endowed in the same manner, although, being for the promotion of learning and piety, it may extend its charity to scholars from every class in the community, and thus acquire the character of a public institution. This is the unequivocal doctrine of the authorities, and cannot be shaken but by undermining the most solid foundations of the common law.
It was indeed supposed at the argument, that if the uses of an eleemosynary corporation be for general charity, this alone would constitute it a public corporation. But the law is certainly not so. To be sure, in a certain sense, every charity, which is extensive in its reach, may be called a public charity, in contradistinction to a charity embracing but a few definite objects. In this sense the language was unquestionably used by Lord Hardwicke in the case cited at the argument; (Attorney-General v. Pearse, 2 Atk. 87; 1 Bac. Abr. tit. Charitable Uses, E. 589) and, in this sense, a private corporation may well enough be denominated a public charity. So it would be if the endowment, instead of being vested in a corporation, were assigned to a private trustee; yet in such a case no one would imagine that the trust ceased to be private, or the funds became public property. That the mere act of incorporation will not change the charity from a private to a public one, is most distinctly asserted in the authorities. Lord Hardwicke, in the case already alluded to, says, `the charter of the crown cannot make a charity more or less public, but only more permanent than it would otherwise be; but it is the extensiveness which will constitute it a public one. A devise to the poor of the parish is a public charity. Where testators leave it to the discretion of a trustee to choose out *457 the objects, though each particular object may be said to be private, yet in the extensiveness of the benefit accruing from them, they may properly be called public charities. A sum to be disposed of by A.B. and his executors, at their discretion, among poor housekeepers, is of this kind.' The charity, then, may, in this sense, be public, although it may be administered by private trustees; and, for the same reason, it may thus be public, though administered by a private corporation. The fact, then, that the charity is public, affords no proof that the corporation is also public; and, consequently, the argument, so far as it is built on this foundation, falls to the ground. If, indeed, the argument were correct, it would follow that almost every hospital and college would be a public corporation; a doctrine utterly irreconcilable with the whole current of decisions since the time of Lord Coke."
Applying this test to the situation confronting us, I find that the Passaic Hospital Association is a private corporation. It is not an instrumentality of government. It was not created nor endowed by government, nor does government have a voice in the management of its affairs. Nor does the fact that it receives an annual payment from the City of Passaic change its status. Levin v. Sinai Hospital of Baltimore City, Inc., 186 Md. 174, 46 A.2d 298 (Md. Ct. App. 1946).
Plaintiff insists that the refusal of the defendants to reappoint him to the medical staff was a violation of his constitutional rights. In effect, his claim is that he has been deprived of the right to use in his profession the property of another. No authorities have been cited in support of this claim, and I reject it as unsound. The permission to a physician to use the facilities of a private hospital is not a vested right. It is a privilege extended to him by the managers of the hospital and it may be withdrawn by them in the exercise of their sound discretion. Levin v. Sinai Hospital of Baltimore City, Inc., supra; Van Campen v. Olean General Hospital, 210 App. Div. 204, 205 N.Y.S. 554 (App. Div. 1924), affirmed 239 N.Y. 615, 147 N.E. 219 (Ct. App. 1925); West Coast Hospital Association v. Hoare, 64 So.2d 293 (Sup. Ct. Fla. 1953).
To put it bluntly, this plaintiff is seeking the aid of this court to compel the defendant corporation to permit him to use its property and facilities for his own private *458 gain. This the court will not do. Judicial intervention in the affairs of a private corporation is justifiable only where the complaining party has suffered an invasion of his civil rights of person or of property. Leeds v. Harrison, 9 N.J. 202 (1952).
Two other claims of the plaintiff require mention. He says that by virtue of his appointment to the emeritus staff he acquired tenure. This is not so. The constitution of the defendant corporation specifically provides that appointments to the medical staff, of which the emeritus staff is a part, are made on a yearly basis. Plaintiff also asserts that the constitution of the defendant corporation requires that he should have been given a hearing by the board of governors before he was denied reappointment. This claim is equally without merit. The constitution of the defendant corporation and the by-laws of the medical staff require that a physician be given a hearing before he is removed during the year for which he was appointed. The only other provision with reference to a hearing is that providing that a member of the active staff is entitled to such hearing before the board of governors before he is denied reappointment. That is not the situation here.
"As distinguished from public or government hospitals, private hospitals had been in existence for a long period of time. They were organized by people with a social conscience and who desired to utilize their means and talents for research and for the relief of suffering humanity. The ownership, control and management of such hospitals were left with those who conceived and organized them or with the managing authorities provided for in the plan of organization and management. Such managing authorities had the power and authority to enlarge and expand such institutions, to carry on research and determine what persons should be granted the privilege of practicing the healing arts in such institutions. It is doubtful if many of the great private hospitals of this country would have been established and would have rendered the service which has been rendered if the managing authorities had been subject to the control or regulation of the government or public officials as to what persons should be granted the privilege of practicing in such institutions."
West Coast Hospital Ass'n v. Hoare, supra.
There will be judgment for the defendant.