Robert J. MARTIN, Plaintiff,

v.

MONMOUTH PARK JOCKEY CLUB, a corporation of New Jersey, and Amory Haskell, Defendants.

No. C-525.

United States District Court
D. New Jersey.

Oct. 18, 1956.

Osborne, Cornish & Scheck, Emanuel P. Scheck and Albert G. Besser, Newark, N. J., for plaintiff, McBride, von Moschzisker & Bradley, Michael von Moschzisker, Philadelphia, Pa., of counsel.

Wilentz, Goldman, Spitzer & Sills, David T. Wilentz, Perth Amboy, for defendants.

FORMAN, Chief Judge.

The plaintiff in this case, Robert J. Martin, is a jockey. In May of 1950 his license was suspended in Maryland for a period of 10 years. The offense that led to his suspension was his having placed a bet on a horse racing against one he was riding. The suspension in Maryland apparently led to his automatic suspension in all other states. However, in 1955 he was reinstated in Maryland, and has since been reinstated in several other states, including New Jersey. His New Jersey license was granted only after a hearing by the New Jersey Racing Commission and by a two to one vote of the three sitting members.

Following his acquisition of a New Jersey license in June of this year, plaintiff accepted engagements to ride at the Monmouth Park track, owned and operated by the defendant the Monmouth Park Jockey Club. The officials of the Club, principally the defendant Amory Haskell, its president, notified plaintiff that because of his past record, he was not permitted to ride at the track. Plaintiff's record recites many violations of riding rules as well as several arrests.

After he had been refused permission to ride at Monmouth Park plaintiff sought injunctive relief in this court. This was denied and the cause has now come on for final hearing on briefs, exhibits, and a stipulation of facts. The defendant Haskell was brought into the case by an amended complaint filed August 2, 1956.

Plaintiff's argument seems to consist of two parts: (1) the defendant Club as a quasi-public corporation may not arbitrarily exclude him, and (2) his license from the New Jersey Racing Commission, under the Rules of the Commission, gives him a right to ride at any track in the state at which he can secure a mount regardless of the wishes of the owner of the track.

Neither point has merit. Although it is intensely regulated, the defendant Club is a private organization. Nothing is more elementary than its right as a private corporation to admit or exclude any persons it pleases from its private property, absent some definite legal compulsion to the contrary. For example, the defendant may not exclude patrons because of their race, N.J.Rev. Stat. 10:1–2 et seq. and 18:25–1 et seq., N.J.S.A. But nowhere in the statutes or rules governing race tracks is there any indication that simply because he has a license from the New Jersey Racing Commission a jockey thereby possesses a right to ride at any track in the state despite the wishes of its owners.

Plaintiff's specific contention in regard to the rules of the New Jersey Racing Commission is that Rule 159 should be construed to give any licensed jockey a right to ride on any track at which he can secure a mount. Rule 159 provides:

"159. The Clerk of the Scales shall make riding engagements for Jockeys and Apprentice Jockeys for those riders that may desire to do so. No fee to be charged for this service."

The Clerk of the Scales is an official whose presence is required by the New Jersey Racing Commission and who is appointed by the operators of the track. His principal duty is to weigh in the jockeys. Rule 159 simply places the further duty on the Clerk to make riding engagements for those jockeys who desire him to do so. As defendants point out, the policy behind this is to provide jockeys a means of securing mounts without having to employ and pay an agent. The Clerk has a duty to make riding engagements for jockeys who have been admitted to the track without a charge to the jockey. Obviously, the fact that he does have to make such engagements imports no guarantee of employment, for jockeys are employed by the owners of the horses and not by the Club. Equally obviously it imports no obligation on the Club to open the premises to all licensed jockeys.

Plaintiff also relies on a series of rules dealing with the powers and duties of the track Stewards, as follows: Rule 253, which provides that only "the Stewards and the Starter shall have the right to impose a fine or suspension"; Rule 555, which says that "in matters pertaining to racing the orders of the Stewards supersede the orders of the Officers and Directors of the Association"; Rule 556 provides that "The Stewards shall have the power and it shall be their duty to regulate and govern the conduct of all * * * jockeys * * *"; and in Rule 559 it is said that "The Stewards shall have the power to determine all questions arising with reference to entries and racing."

As to Rule 253, it is inapplicable because the decision of the track management to forbid plaintiff to ride is not a suspension, which as used here contemplates some official action. Rules 555 and 559 delegate power "pertaining to racing" and "with reference to racing". In their contexts these phrases have relevance to the actual competition among horses and are not broad enough to reach the relationship between the track management and the persons who wish to perform their vocational activities on the track premises. Rule 556 gives the Stewards power to "govern the conduct" of jockeys. But the conduct of a jockey is not being called into question here; it is rather the conduct of the track management.

The plaintiff claims that his licensure entitles him to render services to the owners retaining him upon the property of a third party in derogation of the wishes of the third party. As was stated in deciding to decline a temporary injunction herein the obvious analogy is the right of a licensed physician to practice his profession upon hospital premises. There are few New Jersey cases on this subject, and what there are do not support the broad rights which this plaintiff asserts. The most favorable conclusion that plaintiff can draw from them is that *exclusion* may not be without justification. Jacobs v. Martin, Ch.Div.1952, 20 N.J.Super. 531, 90 A.2d 151 (public hospital) Joseph v. Passaic Hospital Ass'n, App.Div.1955, 38 N.J.Super. 284, 118 A.2d 696, reversing Ch.Div.1955, 35 N.J.Super. 450, 114 A.2d 317 (private hospital).

On the issue of justification the record of plaintiff set forth in the affidavit of Amory Haskell provides sufficient answer. In a sport where the greatest importance should attach to dissipating any cloud of association with the undesirable, and in which the appearance as well as the fact of complete integrity is of paramount consideration, to exclude plaintiff from riding because of his record was an understandably warranted exercise of discretion.

**442**

The defendants may have an order for judgment which should be consented to as to form only by counsel for plaintiff. If such consent is not forthcoming, the order may be noticed for settlement.