

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

August 30, 1995

Honorable Rodney Ellis
Chair
Intergovernmental Relations
Texas State Senate
P.O. Box 12068
Austin, Texas 78711

Opinion No. DM-363

Re: Whether the recently enacted concealed handgun law, Senate Bill 60, particularly the provision to be codified as V.T.C.S. article 4413(29ee), section 32, permits a business owner or operator to post notices prohibiting license holders carrying concealed handguns from the premises of the business, and related questions (RQ-821)

Dear Senator Ellis:

You ask several questions about the concealed handgun law, Senate Bill 60, which was recently enacted by the Seventy-fourth Legislature. *See* Act of May 16, 1995, 74th Leg., R.S., ch. 229, 1995 Tex. Sess. Law Serv. 1998. Senate Bill 60 establishes an extensive and detailed regulatory scheme, which will be codified as V.T.C.S. article 4413(29ee), whereby a person may apply to the Department of Public Safety for a license to carry a concealed handgun. *See id.* § 1, at 1998. You ask several questions about the rights of such license holders to carry concealed handguns and the rights of business owners and operators to exclude license holders carrying concealed handguns from their premises.

First, you ask, "Does Senate Bill 60 give the holder of a concealed [handgun license] the affirmative right to carry a concealed [handgun] anywhere [he or she chooses]? Exactly what are the restrictions?" Senate Bill 60 does not contain a provision which expressly delineates the rights of a license holder nor does it expressly provide that a license holder may carry a concealed handgun wherever he or she chooses. On the other hand, it does amend the Penal Code provisions regarding the unlawful carrying of weapons. Section 46.02(a) of the Penal Code generally provides that a person commits an offense if he or she carries a handgun or other prohibited weapon. An offense under section 46.02 is a class A misdemeanor, *id.* § 46.02(e), unless it is committed on "any premises licensed or issued a permit . . . for the sale of alcoholic beverages," in which case it is a third degree felony, *id.* § 46.02(f); *see also infra* note 1 (discussing recently enacted Penal Code § 46.11). Subsection (b) provides various defenses to prosecution under subsection (a). Senate Bill 60 adds subsection (b)(7), which provides that it is a defense to prosecution under subsection (b) if the person was "carrying a concealed handgun and a valid license issued under Article 4413(29ee) . . . to carry a concealed handgun of the

same category as the handgun the person is carrying." Act of May 16, 1995, 74th Leg., R.S., ch. 229, § 2, 1995 Tex. Sess. Law Serv. 1998, 2013. Thus, Senate Bill 60 excepts license holders from the general prohibition against carrying handguns.

Senate Bill 60 also clearly provides that a license holder is not permitted to carry a concealed handgun in certain places. Section 46.03 of the Penal Code specifically prohibits the carrying of a handgun (or other prohibited weapon) in certain places. An offense under section 46.03 is a third degree felony. Penal Code § 46.03(g). Senate Bill 60 renumbers subsection (f) of section 46.03 as subsection (g) and inserts new language into subsection (f) providing that it is *not* a defense to prosecution under section 46.03 that the actor possessed a handgun and was licensed to carry a concealed handgun under article 4413(29ee). Act of May 16, 1995, 74th Leg., R.S., ch. 229, § 3, 1995 Tex. Sess. Law Serv. 1998, 2013. Section 46.03 prohibits the carrying of a handgun

(1) on the physical premises of a school or educational institution, any grounds or building on which an activity sponsored by a school or educational institution is being conducted,[1] or a passenger transportation vehicle of a school or educational institution, whether the school or educational institution is public or private, unless pursuant to written regulations or written authorization of the institution;

(2) on the premises of a polling place on the day of an election or while early voting is in progress;

(3) in any government court or offices utilized by the court, unless pursuant to written regulations or written authorization of the court;

(4) on the premises of a racetrack; or

(5) into a secured area of an airport. [Footnote added.]

Act of May 27, 1995, 74th Leg., R.S., ch. 260, § 42, 1995 Tex. Sess. Law Serv. 2207, 2490. Thus, it is clear from Senate Bill 60 that a license holder is not permitted to carry a concealed handgun in the foregoing places.

---

[1]The language "any grounds or building on which an activity sponsored by a school or educational institution is being conducted" was added to section 46.03 by the Seventy-fourth Legislature in Senate Bill 1. *See* Act of May 27, 1995, 74th Leg., R.S., ch. 260, §§ 42, 86 (act effective immediately except as otherwise provided), 1995 Tex. Sess. Law Serv. 2207, 2490, 2505. Senate Bill 1 also added section 46.11 to the Penal Code, which provides that the penalty for most offenses under chapter 46 of the Penal Code "is increased to the punishment prescribed for the next highest category of offense" if it is shown that the actor committed the offense within a weapon-free school zone. *Id.* § 43, at 2490-91.

In addition, Senate Bill 60 adds section 46.035 to the Penal Code. Act of May 16, 1995, 74th Leg., R.S., ch. 229, § 4, 1995 Tex. Sess. Law Serv. 1998, 2013-14. Subsection (b) of section 46.035 provides that a license holder commits an offense if he or she intentionally, knowingly, or recklessly carries a handgun under the authority of article 4413(29ee) in certain places.[2] Such conduct is prohibited

(1) on the premises of a business that has a permit or license issued under Chapter 25, 28, 32, or 69, Alcoholic Beverage Code, if the business derives 51 percent or more of its income from the sale of alcoholic beverages for on-premises consumption;

(2) on the premises where a high school, collegiate, or professional sporting event or interscholastic event is taking place, unless the license holder is a participant in the event and a handgun is used in the event;

(3) on the premises of a correctional facility;

(4) on the premises of a hospital licensed under Chapter 241, Health and Safety Code, or on the premises of a nursing home licensed under Chapter 242, Health and Safety Code, unless the license holder has written authorization of the hospital or nursing home administration, as appropriate;

(5) in an amusement park[3]; or

(6) on the premises of a church, synagogue, or other established place of religious worship. [Footnote added.]

---

[2]Subsection (a) of section 46.035 also governs the manner in which a license holder may carry a handgun. It provides that a license holder carrying a handgun under the authority of article 4413(29ee) commits an offense if he or she intentionally fails to conceal the handgun. It is a defense to prosecution under subsection (a) if the person displayed the handgun under circumstances in which he or she would have been justified in the use of deadly force under chapter 9 of the Penal Code. Penal Code § 46.035(h). Section 46.035(d) provides that a license holder commits an offense if he or she carries a handgun under the authority of section 4413(29ee) while intoxicated.

[3]The term "amusement park" is defined by Penal Code section 46.035(f)(1) as follows:

a permanent indoor or outdoor facility or park where amusement rides are available for use by the public that is located in a county with a population of more than one million, encompasses at least 75 acres in surface area, is enclosed with access only through controlled entries, is open for operation more than 120 days in each calendar year, and has security guards on the premises at all times. The term does not include any public or private driveway, street, sidewalk or walkway, parking lot, parking garage, or other parking area.

Act of May 16, 1995, 74th Leg., R.S., ch. 229, § 4, 1995 Tex. Sess. Law Serv. 1998, 2014.

*Id.* In addition, subsection (c) of section 46.035 provides that a license holder commits an offense if he or she intentionally, knowingly, or recklessly carries a handgun under the authority of article 4413(29ee) at any meeting of a governmental entity. Subsection (g) of section 46.035 provides that it is a class A misdemeanor to carry a concealed handgun at the foregoing places, with the exception of the premises of businesses that have permits to sell alcoholic beverages and correctional facilities. Carrying a concealed handgun on the latter two types of premises constitutes a third degree felony. *See also supra* note 1 (discussing recently enacted Penal Code § 46.11).

The term "premises" as used in section 46.035 "means a building or a portion of a building. The term does not include any public or private driveway, street, sidewalk or walkway, parking lot, parking garage, or other parking area." Penal Code § 46.035(f)(3); *see also id.* § 46.035(f)(1) (providing that the term "amusement park" does not include "any public or private driveway, street, sidewalk or walkway, parking lot, parking garage, or other parking area."). This definition of "premises" was added after a witness testified in committee hearings on Senate Bill 60 that case law defines "premises" broadly, to include parking lots, driveways, and land adjacent to a building. Hearings on S.B. 60 Before the House Comm. on Public Safety, 74th Leg., R.S. (March 21, 1995) (testimony of Charles Cotten) (tape available from House Video/Audio Services Office). He was concerned that an individual who went someplace where concealed guns were prohibited would commit a crime by driving into the driveway. *Id.* He felt that the legislature intended that an individual could leave his gun in the car when he or she went into such a building. *Id.* Thus, while section 46.035 prohibits the carrying of a handgun at the foregoing places, it does not prohibit the carrying of a handgun in the driveway, street, sidewalk or walkway, parking lot, parking garage, or other parking area of a business that sells alcoholic beverages, a high school, collegiate, or professional sporting event or interscholastic event, correctional facility, hospital or nursing home, amusement park, or church, synagogue, or other established place of religious worship.[4]

Your next questions arise from the provision of Senate Bill 60 which enacts section 32 of article 4413(29ee) as follows:

---

[4]As the witness stated, the term "premises" is usually defined more broadly to include not only a building but also the lot or land under the control of the business owner or upon which the building is located. *See, e.g., J.B. Advertising, Inc. v. Sign Bd. of Appeals,* 883 S.W.2d 443, 447 (Tex. App.– Eastland 1994, writ denied); Alco. Bev. Code § 11.49 (defining "premises" for purposes of Alcoholic Beverage Code); Attorney General Opinion H-22 (1973) at 3. Although the legislature gave term "premises" a different meaning for purposes of section 46.035, as discussed below we believe that Senate Bill 60 does not affect the rights of a private property owner to prohibit the carrying of handguns on their private property. This could include privately owned driveways, streets, sidewalks or walkways, parking lots, parking garages, and other parking areas. For this reason, conduct which is not an offense under section 46.035 of the Penal Code because it occurs at a place excluded from the definition of the term "premises" may be an offense under section 30.05 of the Penal Code. *See infra* pages 5-9.

> This article does not prevent or otherwise limit the right of a public or private employer to prohibit persons who are licensed under this article from carrying a concealed handgun on the premises of the business.

Act of May 16, 1995, 74th Leg., R.S., ch. 229, § 1, 1995 Tex. Sess. Law Serv. 1998, 2012. You ask whether this provision gives business owners and operators the right to post notices prohibiting persons from carrying concealed handguns on the premises of the business, or whether it is limited to permitting employers to restrict their employees from carrying concealed handguns on the premises. You also ask, "Does this bill prevent any business owner [or] operator from regulating the carrying of concealed [handguns] on the . . . premises [of the owner's or operator's business]?"

On its face, the intent of section 32 is ambiguous. While it refers to an "employer," it uses the term "person" rather than the term employee. Thus, it is not clear whether the purpose of section 32 is to permit all businesses owners and operators, or just employers, to limit all persons, or just employees, from carrying concealed handguns on the premises of their businesses. As explained below, the legislative history of Senate Bill 60 suggests that section 32 is intended to apply only to the employer-employee relationship. We believe it is also clear from the legislative history of Senate Bill 60, however, that the legislature did not intend the act to preclude private property owners from excluding license holders carrying concealed handguns from their premises under certain circumstances regardless of their status as employees or nonemployees.

Before turning to the legislative history of Senate Bill 60, we begin our analysis with a brief examination of the law regarding the rights of property owners to exclude others. As a general matter, "[t]he power to exclude has traditionally been considered one of the most treasured strands in an owner's bundle of property rights." *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 435-36 (1982) (citing *Kaiser Aetna v. United States*, 444 U.S. 164, 179-80 (1979); Restatement of Property § 7 (1936)). "'At common law, proprietors of private enterprises such as places of amusement and entertainment can admit or exclude whomsoever they please, and their common-law right continues until changed by legislative enactment.'" *Bresnik v. Beulah Park Ltd. Partnership*, 617 N.E.2d 1096, 1097 (Ohio 1993) (quoting *Fletcher v. Coney Island, Inc.*, 134 N.E.2d 371 (1956)). "Nothing is more elementary than [the] right [of] a private corporation to admit or exclude any persons it pleases from its private property, absent some definite legal compulsion to the contrary." *Martin v. Monmouth Park Jockey Club*, 145 F. Supp. 439 (D.N.J. 1956). Texas cases are in accord. *Terrell Wells Swimming Pool v. Rodriguez*, 182 S.W.2d 824, (Tex. Civ. App.--San Antonio 1944, no writ) ("The law in this State is well settled that in the absence of Civil Rights Legislation to the contrary the proprietor of a place of amusement which is privately operated can refuse to sell a ticket to and may thereby exclude any person he desires from the use of his facilities for any reason sufficient to him, or for no reason whatever."); *Jordan v. Concho Theatres, Inc.*, 160 S.W.2d 275, 276 (Tex. Civ. App.--El Paso 1941, no writ) ("Theatre business is a

private business, subject to such restrictions as the legislative authority may impose; it owes no public duty; it is not compelled to admit any who may apply, but may deny admission to any it desires.").

The principle that a property owner may exclude persons from his or her premises is embodied in the Texas criminal trespass statute, section 30.05 of the Penal Code, which provides as follows:

> A person commits an offense if he enters or remains on property
> or in a building of another without effective consent and he:
>
> (1) had notice that the entry was forbidden; or
>
> (2) received notice to depart but failed to do so.

An offense under section 30.05 is generally a class B misdemeanor but is a class A misdemeanor if "the actor carries a deadly weapon on or about his person during the commission of the offense." Penal Code § 30.05(d).

For purposes of this statute, "notice" includes "oral or written communication by the owner or someone with apparent authority to act for the owner," *id.* § 30.05(b)(2)(A), and "a sign or signs posted on the property or at the entrance to the building, reasonably likely to come to the attention of intruders, indicating that entry is forbidden," *id.* § 30.05(b)(2)(C). "Effective consent" means "consent by a person legally authorized to act for the owner." *Id.* § 1.07(19). "Owner" means a person who, in the case of real property, "has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor." *Id.* § 1.07(35)(A). To be an "owner" under this provision, one need not possess title to the property but must merely have a greater right to possession of the property than the actor. *See, e.g., Gollinger v. State*, 834 S.W.2d 553, 557 (Tex. Civ. App.--Houston [14th Dist.] 1992, no writ) (employee who was in charge of operating employer's facilities was owner of premises for purposes of criminal trespass statute); *Bustillos v. State*, 832 S.W.2d 668, 672 (Tex. Civ. App.--El Paso 1992, writ ref'd) (building manager in actual possession of the property and who had greater right of possession than protesters was owner of building for purposes of criminal trespass statute). Thus, a business owner or operator who does not possess title to the business premises would still generally qualify as an "owner" under the criminal trespass statute.

Clearly, under Texas law as it existed prior to the passage of Senate Bill 60, a business owner or operator could file a criminal complaint against a person who came on to the business premises contrary to the terms of a posted notice. The question we must next consider is the extent to which Senate Bill 60 is intended to change existing law.

The language in section 32 was not in Senate Bill 60 as introduced. *See* S.B .60 74th Leg., R.S. 29 (1995) (as introduced) (copy on file at Texas Legislative Reference Library). Rather, Senate Bill 60 as introduced contained a limited list of places where

license holders were expressly prohibited from carrying concealed handguns to be codified in section 13 of article 4413(29ee). *Id.* at 18. The committee substitute for Senate Bill 60 added the following place to that list: "privately owned premises commonly used by the public, if the owner of the premises prominently displays at each entrance to the premises a notice that it is unlawful to carry a handgun on the premises." C.S.S.B. 74th Leg., R.S., 60, § 1, (1995). At the Senate Criminal Justice Committee hearing, Senator Patterson, the sponsor of the bill, testified as follows:

> Any person can prohibit someone from carrying on their residence premises--their business premises--because that is a right they already have in law, by virtue of private property rights.

He indicated that the committee substitute was intended to reflect existing law, with the addition of the posting requirement in the case of privately owned premises commonly used by the public. Hearings on S.B. 60, Senate Criminal Justice Comm., 74th Leg. (February 28, 1995) (testimony of Senator Patterson) (tape available from Senate Staff Services Office).

Section 13 was deleted in its entirety from the committee substitute for Senate Bill 60 on the Senate floor. S.J. OF TEX., 74th Leg., R.S. 597 (1995). It was replaced with a provision adding section 46.035 to the Penal Code. That amendment set forth a list of places where a license holder would be prohibited from carrying a handgun, including "privately owned premises commonly used by the public, if the owner of the premises prominently displays at each entrance to the premises a notice that it is unlawful to carry a handgun on the premises." *See* S.B. 60, 74th Leg., R.S., § 4, at 37 (1995) (as engrossed) (copy on file with Texas Legislative Reference Library). As noted above, an offense under this provision is generally a class A misdemeanor. Senator Brown explained that the purpose of this amendment was to coordinate the list of prohibited places with the Penal Code. Debate on S.B. 60 on the Floor of the Senate, 74th Leg. R.S., (March 15, 1995) (testimony of Senator Brown regarding floor amendment no. 6) (tape available from Senate Staff Services Office).

The House Committee on Public Safety deleted the provision which would have been codified in section 46.035 of the Penal Code making it a class A misdemeanor to carry a concealed handgun on posted "privately owned premises commonly used by the public" and added the "rights of employers" provision that is now codified as section 32 of article 4413(29ee) in the house committee substitute for Senate Bill 60. Representative Allen, a house sponsor of Senate Bill 60, explained that the latter provision "provides that nothing in this act shall be construed or interpreted as preventing or otherwise limiting the right of any private or public employer from lawfully barring license holders from carrying concealed handguns on their own premises." Hearings on H.B. 72 and S.B. 60 Before the House Comm. on Public Safety, 74th Leg., R.S. (April 4, 1995) (testimony of Representative Allen) (tape available through House Video/Audio Services Office).

The differences between the senate version of Senate Bill 60, containing the Penal Code provision regarding "privately owned premises commonly used by the public," and the house version of the bill, containing the "rights of employers" provision, were reconciled in conference committee. With respect to the latter provision, the conference committee discussion reveals that the legislators thought that employers had the right under existing law to preclude employees from carrying handguns on their business premises, but that the provision had been included anyway to satisfy the concerns of certain employers. Representative Carter, for example, explained that the Legislative Council had opined that although an employer had the right to prohibit an employee from carrying a handgun on the premises of the business under existing law, "there was some gray area in there, so this is just an affirmative statement that an employer, without doubt, can tell his employees that they can't carry on the premises." Conference Committee on Senate Bill 60, 74th Leg. R.S. (May 7, 1995) (tape available from Senate Staff Services Office). On the basis of this evidence of legislative intent, we conclude that section 32 is intended to apply only to the employer-employee relationship.

The provision in the senate version of Senate Bill 60 regarding "privately owned premises commonly used by the public," was the topic of extensive discussion later in the conference committee. Representative Allen explained that this provision was

> deliberately omitted from the House version [the house committee substitute for Senate Bill 60] for the following reason[:] If the sign is posted in accordance with other provisions in the bill, in the Senate Bill it is enforced by stand-alone, Class A misdemeanor simply for the fact of walking into that prohibit[ed] place. In the House version this prohibited place is not listed, but if you post a sign the effect of existing law is that you trespass, which is a Class B misdemeanor . . . .The House version [is] intended to give you the opportunity to inadvertently enter a place if a sign had fallen or the posted notice was not visible. The Senate version does not contain such a provision. . . . Under the House provision you would always have, if you had the sign up, a Class B misdemeanor . . . under criminal trespass.
>
> . . . .
>
> [I]f a person posts a sign that says no one . . . is allowed to enter with a weapon, and you . . . violate that person's wishes, . . . then you've committed a trespass.

Conference Comm. on S.B. 60, 74th Leg., R.S. 35-36 (May 7, 1995) (transcript available through Senate Staff Services Office). The conference committee voted to delete the senate provision from the bill. *Id.* at 37-38.

From the foregoing discussion, we conclude that the legislature deleted the provision in the senate version of Senate Bill 60 regarding "privately owned premises commonly used by the public" because the legislature preferred for the criminal trespass statute, with its explicit notice requirement and separate system of penalties, to apply. Thus, even though the legislature omitted the senate provision regarding "privately owned premises commonly used by the public," the legislature very clearly intended to permit private property owners, including business owners and operators, to exclude license holders carrying concealed handguns from their premises under existing law, namely the criminal trespass statute in the Penal Code.

In answer to your specific question, although section 32 applies only to the employer-employee relationship, Senate Bill 60 does not prevent a business owner or operator from excluding persons, including both employees and nonemployees, carrying concealed handguns. Under section 30.05 of the Penal Code, any person, including a license holder, who enters or remains on property or in a building of another carrying a concealed handgun without effective consent to carry and who has had notice that concealed handguns are prohibited commits a criminal offense.[5] Senate Bill 60 is not intended to and does not permit a license holder to carry a concealed handgun on the premises of a private business contrary to notice as defined by the criminal trespass statute prohibiting the carrying of a concealed handgun.

We believe that the above discussion also addresses your next question: "If the bill does not prohibit such, does it provide any specific requirements that the business owner/operator must comply with in order to restrict [a license holder] from carrying concealed [handguns] on [the owner's or operator's] premises?" We would further note that although Senate Bill 60 does not set forth any specific requirements that a business owner or operator must comply with in order to restrict a license holder from carrying concealed handguns on the premises of the business, we believe that the business owner or operator must provide notice, as defined by the criminal trespass statute, that concealed handguns are prohibited. Given that a business owner or operator should not be able to ascertain that a person is carrying a concealed handgun, making oral communication impractical, a posted sign would be the most effective notice.

We would also stress that section 31 of article 4413(29ee) expressly *requires* a business that has a permit or license under chapter 25, 28, 32, or 69 of the Alcoholic Beverage Code and that derives 51 percent or more of its income from the sale of alcoholic beverages for on-premises consumption to display a notice at each of its entrances that it is unlawful to carry a handgun on the premises. *See* V.T.C.S. art. 4413(29ee), § 31(a), (c). This requirement also applies to a hospital licensed under

---

[5]Given that the actor carries a deadly weapon, the offense is a class A misdemeanor according to the terms of section 30.05(d) of the Penal Code.

chapter 241 of the Health and Safety Code and a nursing home licensed under chapter 242 of the Health and Safety Code. *Id.* § 31(b), (c).[6]

Next you ask, "If a business owner/operator can restrict the carrying of concealed [handguns] on the[ir] premises, what [type of] authority do they have to insure compliance?" In a related question, you ask about the potential liability of a business owner or operator "for removing someone for non-compliance." As is clear from the above discussion, a business owner or operator can insure compliance through enforcement of the criminal trespass statute by reporting the trespass to the proper law enforcement authorities and filing a criminal complaint against an alleged trespasser. A brief discussion of business owners' and operators' other possible options and the potential liability inherent in those options follows.[7]

Article 14.01(a) of the Code of Criminal Procedure permits private citizens to make arrests only if the offense is classed as a felony or as an offense against the public peace.[8] Criminal trespass is classed as either a class A or a class B misdemeanor, *see* Penal Code § 30.05(d), and thus is not classed as a felony. Nor is criminal trespass in and of itself a breach of the peace. *Heath v. Boyd*, 175 S.W.2d 214, 216-17 (Tex. 1943) ("Trespassing is not a felony or a breach of the peace. It is not one of those offenses for which the statute defining it gives the peace officer the right to arrest the offender without warrant."). It may, however, be a breach of the peace to display a handgun in certain circumstances. *See, e.g., Bell v. State*, 256 S.W.2d 108 (Tex. Crim. App. 1953) (rude display of pistol may constitute breach of peace); *Cortez v. State*, 256 S.W.2d 855 (Tex. Crim. App. 1953) (same); *see also* Penal Code § 42.01(10) (providing that a person commits an offense if he or she intentionally or knowingly "displays a firearm or other deadly weapon in a public place in a manner calculated to alarm"). We further note that it is a felony to carry a concealed handgun on any of the premises listed in section 46.03 of the Penal Code as well as the premises of certain businesses that have a permit to sell alcoholic beverages and correctional facilities, as provided by subsection (g) of section 46.035. For this reason, a business owner or operator is generally not authorized to arrest a mere trespasser and may be subject to liability in tort, particularly an action for false

---

[6]Senate Bill 60 prohibits the carrying of a concealed handgun on such premises regardless of whether notice is actually posted. The prohibition against carrying a concealed handgun on such premises in section 46.035(b) of the Penal Code is not conditioned on the posting of a notice.

[7]*See also infra* page 12-13 and note 10 regarding possible liability in civil action in tort for malicious prosecution.

[8]Article 14.01 of the Code of Criminal Procedure provides in pertinent part: "A peace officer or any other person, may, without a warrant, arrest an offender, when the offense is committed in his presence or within his view, if the offense is one classed as a felony or as an offense against the public peace." Code Crim. Proc. art. 14.01(a).

arrest,[9] for attempting to make a citizen's arrest of a mere trespasser. A business owner or operator on the categories of premises listed in section 46.03, premises of certain businesses that have a permit to sell alcoholic beverages, or correctional facilities would be authorized to make a citizen's arrest. *See also supra* note 1 (discussing recently enacted Penal Code § 46.11). A business owner or operator might also be authorized to make a citizen's arrest if the trespasser displays a handgun.

We further note that a business owner or operator who attempts to physically remove a trespasser from the premises risks prosecution for criminal assault and liability in a civil action in tort for assault. *See* Penal Code § 22.01 (setting forth elements of criminal assault); *Hogenson v. Williams,* 542 S.W.2d 456, 458 (Tex. Civ. App.--Texarkana 1976, no writ) (conduct described in Penal Code § 22.01 also constitutes civil tort). Under section 9.41 of the Penal Code, however, the use of force may be justified to prevent or terminate a trespass. Section 9.41 provides in pertinent part:

> A person in lawful possession of land . . . is justified in using force against another when and *to the degree the actor reasonably believes the force is immediately necessary* to prevent or terminate the other's trespass on the land . . . .

Penal Code § 9.41(a) (emphasis added). A business owner or operator who attempts to physically remove a trespasser from the premises must use no more force than is reasonably necessary. The degree of force which is reasonably necessary will vary from situation to situation and will involve issues of fact. *Compare Williams v. State,* 279 S.W.2d 335 (Tex. Crim. App. 1955) (store owner's belief that customer was interfering with other customers did not justify use of force) *with Hampton v. Sharp,* 447 S.W.2d 754 (Tex. Civ. App.--Houston [1st Dist.] 1969, writ ref'd n.r.e.) (club owner's physical removal of plaintiff from premises, although an assault, was justified use of force where club owner had previously barred plaintiff from the premises "to protect and maintain his business interests").

You also ask about the potential liability of a business owner or operator "for a third party who is injured by a [license holder] who has failed to comply" with a notice prohibiting the carrying of concealed handguns on the premises. Generally, an ordinary business owner or operator, as opposed to a proprietor of a restaurant, inn, or similar establishment, is under a duty to exercise reasonable care for the safety of his or her invitees. An occupier of business premises is not an insurer of the safety of his or her invitees. *Garner v. McGinty,* 771 S.W.2d 242, 246 (Tex. Civ. App.--Austin 1989, no writ). "A business invitor owes a duty to his business invitees to take reasonable steps to

___

[9]The elements of the tort of false arrest or imprisonment are as follows: (1) willful detention of a person; (2) against the consent of the person detained; and (3) the detention is without authority of law. *Moore's Inc. v. Garcia,* 604 S.W.2d 261, 263 (Tex. Civ. App.--Corpus Christi 1980, writ ref'd n.r.e.) (citing cases).

protect them from intentional injuries caused by third parties if he knows or has reason to know, from what he has observed or from past experience, that criminal acts are likely to occur, either generally or at some particular time." *Id.* at 246; *Castillo v. Sears, Roebuck & Co.*, 663 S.W.2d 60, 66 (Tex. Civ. App.--San Antonio 1983, writ ref'd n.r.e.) ("there is no duty upon the owners or operators of a shopping center . . . or upon merchants and shopkeepers generally, whose mode of operation of their premises does not attract or provide a climate for crime, to guard against criminal acts of a third party, unless they know . . . that acts are occurring or are about to occur on the premises that pose imminent probability of harm to an invitee; whereupon a duty of reasonable care to protect against such act arises."). Thus, a plaintiff in a case against an ordinary business owner or operator will have to demonstrate that the business owner or operator knew or had reason to know that criminal acts were likely to occur in order to establish that the business owner or operator had a duty to take reasonable steps to protect invitees from injuries caused by third parties. By contrast, the duty of a proprietor of a restaurant, inn, or similar establishment generally includes the duty to exercise reasonable care to protect patrons from assaults of third persons while on the premises. *Eastep v. Jack-in-the-Box, Inc.*, 546 S.W.2d 116 (Tex. Civ. App.--Houston [14th Dist.] 1977, writ ref'd n.r.e.).

Once a duty to protect patrons from the intentional acts of third parties is established, whether a business owner or operator will be held liable for injuries to customers inflicted by third persons appears to depend in great part upon the foreseeability of the assault and whether the business owner or operator took reasonable measures to prevent the assault. *Compare id.* (restaurant was negligent for failing to demand that perpetrators of knife fight leave premises before fight began and to warn plaintiffs of acts and conditions of perpetrators before fight began) *with Campos v. South Tex. Beverage Co.*, 679 S.W.2d 739 (Tex. Civ. App.--El Paso 1984, no writ) (restaurant did not breach its duty of care to business invitee who was shot to death during robbery in restaurant where restaurant had no knowledge of potential danger). We believe it is unlikely that a trier of fact would conclude that a business owner or operator who posted a sign prohibiting the carrying of concealed handguns on the premises was liable for injuries to a patron inflicted by a license holder carrying a concealed handgun. First, it would be difficult for a business owner or operator to foresee an injury inflicted by a person carrying a *concealed* handgun. Furthermore, we believe that a trier of fact would likely conclude that the business owner or operator had taken reasonable steps to prevent the injury by posting the sign prohibiting the carrying of concealed weapons on the premises.

Finally, you ask the following: "In the past courts have held that public officials acting on the basis of an Attorney General's Opinion, regardless of whether the opinion was found to be correct or not, were immune from liability. Does this principle extend to private persons?" This opinion concludes that a business owner or operator may exclude license holders carrying concealed handguns from their business premises under criminal trespass statute. If our construction of the relationship between Senate Bill 60 and the criminal trespass statute is found to be incorrect by a court, then the person who is alleged to have trespassed will not be convicted. It is difficult for us to imagine, however, that the

business owner or operator could be found civilly or criminally liable for posting his premises and reporting alleged violations of the statute to criminal law enforcement authorities by filing a criminal complaint. Thus, we are reluctant to speculate on what weight a court might give the fact that a person acted on the basis of this opinion. We do note, however, that a person could try to use this opinion to demonstrate absence of malice in a civil suit for malicious prosecution.[10] We express no opinion as to whether a trier of fact would find such a showing meritorious.

## SUMMARY

Section 46.03 of the Penal Code, as amended by Senate Bill 60, prohibits the carrying of a concealed handgun on the physical premises of a school, an educational institution, or a passenger transportation vehicle of a school or an educational institution, whether the school or educational institution is public or private, unless pursuant to written regulations or written authorization of the institution; on the premises of a polling place on the day of an election or while early voting is in progress; in any government court or offices utilized by the court, unless pursuant to written regulations or written authorization of the court; on the premises of a racetrack; or into a secured area of an airport.

Section 46.035 to the Penal Code, as added by Senate Bill 60, prohibits a person from intentionally, knowingly, or recklessly carrying a handgun under the authority of article 4413(29ee): on the premises of a business that has a permit or license issued under chapter 25, 28, 32, or 69 of the Alcoholic Beverage Code, if the business derives 51 percent or more of its income from the sale of alcoholic beverages for on-premises consumption; on the premises where a high school, collegiate, or professional sporting event or interscholastic event is taking place, unless the license holder is a participant in the event and a handgun is used in the event; on the premises of a correctional facility; on the premises of a hospital licensed under chapter 241 of the Health and Safety Code, or on the premises of a nursing home licensed under chapter 242 of the Health and Safety Code, unless the license holder has written authorization

[10]The elements of the tort of malicious prosecution are as follows: (1) the commencement of a criminal prosecution against the plaintiff; (2) that the defendant initiated or procured the prosecution; (3) that the prosecution terminated in favor of the plaintiff; (4) that the plaintiff was innocent; (5) that there was no probable cause for the proceeding; (6) that the defendant acted with malice; and (7) damages. *Browning-Ferris Industries, Inc. v. Lieck*, 881 S.W.2d 288 (Tex. 1994) (modifying second element); *Metzger v. Sebek*, 892 S.W.2d 20, 41-41 & n.10 (Tex. App.--Houston [1st Dist.] 1994), *pet. for cert. filed*, 64 U.S.L.W. 3086 (U.S. July 26, 1995)) (No 95-169).

of the hospital or nursing home, as appropriate; in an amusement park; on the premises of a church, synagogue, or other established place of religious worship; or at any meeting of a governmental entity. While section 46.035 prohibits the carrying of a handgun at the foregoing places, it does not prohibit the carrying of a handgun in the driveway, street, sidewalk or walkway, parking lot, parking garage, or other parking area of a business that sells alcoholic beverages, a high school, collegiate, or professional sporting event or interscholastic event, correctional facility, hospital or nursing home, amusement park, or church, synagogue, or other established place or religious worship.

Senate Bill 60 does not preclude private property owners from excluding license holders carrying concealed handguns from their premises under the criminal trespass statute, Penal Code, section 30.05. A license holder who enters or remains on property or in a building of another carrying a concealed handgun without effective consent to carry and who has had notice that concealed handguns are prohibited commits a criminal offense.

Yours very truly,

DAN MORALES
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by Mary R. Crouter
Assistant Attorney General